**UNITED STATES v. RAKES et al.**
**Criminal No. 4517.**

District Court, E. D. Virginia,
Richmond Division.

Oct. 10, 1947.

Harry H. Holt, Jr., U. S. Atty., of Hampton, Va., George R. Humrickhouse, Asst.

646

U. S. Atty., of Richmond, Va., for the United States.

W. R. Ashburn, of Norfolk, Va., Robert H. McNeill, of Washington, D. C., James B. Morgan, of Leesburg, Va., W. R. Allcott, and Robert Lewis Young, both of Richmond, Va., C. Carter Lee, of Rocky Mount, Va., Stuart B. Campbell, of Wytheville, Va., and Leith S. Bremner, of Richmond, Va., for defendants.

HUTCHESON, District Judge.

In this case nine persons were indicted on multiple counts, charged with various violations of the National Banking Act, 12 U.S.C.A. § 21 et seq. The case came to trial on March 3, 1947, and the verdict was returned on April 25, 1947. Due to the indisposition of the resident Judge, the trial was conducted by a visiting Judge, acting under appropriate designation. In addition to the regular panel of twelve there were two alternate jurors. The trial was the subject of considerable local interest and newspaper publicity.

On Sunday, April 20, 1947, one of the jurors, T. L. Madison, who resides in Hanover County, Virginia, received a telephone call from a person known to him, requesting that he meet him, the caller, at Mechanicsville. The juror believed the caller was desirous of selling a used truck and pursuant to arrangements proceeded to the place designated for the meeting. The caller, who was identified as a man named Martin, stated to the juror that he desired to discuss with him the case then being tried and told the juror, in substance, that he, Martin, was in a position to pay the juror some "easy money," or words to that effect, if he, acting with another juror, would cause the jury to disagree or "hang." Madison declined to discuss the matter, immediately left and proceeded to the home of the Judge of the Circuit Court for Hanover County, who was a neighbor and friend of the juror of long standing. Upon reaching the residence of the Judge the juror was in a condition of some agitation and disclosed the foregoing facts. He indicated apprehension that he, the juror, had been guilty of misconduct and sought the advice of the Judge. The juror was advised to communicate his information to the Trial Judge and at the request of the juror the Judge wrote to the Trial Judge, briefly outlining the facts. On the following morning the juror reported to the office of the Trial Judge and, in the presence of an Assistant United States Attorney engaged in the prosecution of the case, delivered the letter. The Trial Judge interrogated the juror as to whether the occurrence would influence his verdict and being satisfied from assurances received that it would not, directed the juror not to communicate the facts to anyone and stated that the Assistant United States Attorney would take appropriate action to have the matter investigated.

The argument of counsel was concluded during that day and on Tuesday morning, April 21, the case was submitted to the jury at the conclusion of the Court charge.

At that time the alternate jurors were excused and the regular panel of twelve were placed under the supervision of the Marshal and kept together until the morning of Friday, April 25, when a verdict of guilty was returned as to eight defendants on all counts upon which they were indicted, as to one defendant on one count and not guilty on another count.

On the night of Wednesday, April 23, or Thursday, April 24, the juror Madison, at the hotel where the jury was quartered, related his experience here set out to the foreman and three others jurors, one of whom informed yet another member of the occurrence. While the time of those disclosures is not definitely fixed, I conclude from the best evidence available, including the testimony of juror Madison, it was on Thursday night.

Seven defendants who were convicted filed appeals with the United States Circuit Court of Appeals, Fourth Circuit, which appeals are now pending. See 163 F.2d 771.

Early in September 1947, the appellants filed motions in the Circuit Court of Appeals, Fourth Circuit, and in this Court, seeking new trials, the basis of such motions being allegations in substance that the juror Madison had been solicited to accept a bribe to cause the jury to dis-

agree; that he had communicated this fact to the Trial Judge, who had not disclosed the situation to the defendants or their counsel; that they had no opportunity to file motions for a mistrial; that the jurors had discussed the episode among themselves; that such occurrences deprived the defendants of a fair and impartial trial by a jury free of prejudice and improper influence. It is further alleged that the motions were filed promptly after knowledge of any of these facts was first received by the defendants and their counsel.

On September 26, 1947, the Circuit Court of Appeals entered an order denying the motions of appellants to remand the case for the hearing of the motions for a new trial, but reciting that the appellants were authorized and given leave to apply to this Court for a hearing on such motions.

■ When the motions came on for hearing before the Trial Judge at Richmond on October 8, 1947, he formally declared himself disqualified and offered to appear as a witness for the purpose of placing in the record, in the capacity of witness, all the information in his possession pertaining to the episode. Thereupon, with the consent of all parties, by counsel, I presided as resident Judge to hear the motions forthwith, being of opinion the designation provided for under Title 28 U. S.C.A. §§ 17 and 18, is unnecessary when a resident Judge is available and even if necessary the requirement may be waived by counsel.

Certain defendants testified, disclaiming any knowledge of the communication with the juror and affidavits of the others to the same effect are parts of the record.

Five jurors, including the juror Madison, testified. A sixth juror was not called to testify due to his nervous condition but it was stipulated that if called he would have testified substantially as those who took the stand.

At the present stage of the case the Court is not in the same situation as was the able Judge who tried the case and by whom the juror was interrogated. Being then satisfied that juror Madison was not

prejudiced and that none of the other jurors were aware of the occurrence, he concluded that the trial should proceed. The facts now disclosed present a situation which differs materially. Unknown to the Trial Judge, the juror instead of dismissing the matter from his mind as of no consequence, as the Trial Judge had directed and expected, he continued to consider and worry over the episode through the final arguments of counsel on Monday, through the Court's charge on Tuesday and the deliberations of the jury commencing on Tuesday and continuing at least until Wednesday night and more probably until Thursday night. During the last three days the jurors were kept together under the supervision of the Marshal. No verdict was reached, or at least none reported. It is to be assumed that during this time the facts of the case and the Court's charge were the subject of constant discussion and thought by members of the jury. Those with divergent opinions were urging or at least explaining their respective points of view. In this atmosphere on the night of the third day of constant association and discussion, as many as five additional jurors were informed of what had happened to Mr. Madison. The details of his disclosure are not known. It is not known how the various jurors voted formerly nor whether any votes were changed after receiving this information. These facts might have considerable bearing upon the question before the Court, but we may only speculate upon them. It well may have been the final factor which put an end to lingering reasonable doubts entertained by one or more of the jurors. It may have been an unconscious influence, but real. It was an influence which was highly improper, with no place in the proceedings and one which can not be accurately measured even by the person influenced.

The verdict was returned the following morning.

■ The right to a fair and impartial jury trial need not be discussed here. It is too well understood to require more than passing reference. See Stone v. United States, 6 Cir., 113 F.2d 70, at page 77. It follows that anything which affects or may

648

affect that result may be said, without exaggeration, to constitute an assault upon the foundations of the entire system of administering justice.

 From my examination of the authorities it would appear that the action of the Court in such case as this depends upon the particular facts. In Wheaton v. United States, 8 Cir., 133 F.2d 522, page 527, the rule is stated to be as follows:

"The law is that communications, relative to a case on trial, between jurors and third persons, or witnesses, or the officer in charge of the jury, are absolutely forbidden, and, if it appears that such communications have taken place, a presumption arises that they were prejudicial, but this presumption may be rebutted by evidence showing the communications to have been harmless."

I believe the foregoing quotation correctly states the law. See also Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Stone v. United States, 6 Cir., 113 F.2d 70.

In the instant case this communication actually was between the juror Madison and his fellow jurors rather than between jurors and third persons. However, for all practical purposes it was a communication from the third person, Martin, to and through the juror Madison.

While it was argued that the verdict of not guilty on one count indicates careful consideration of the evidence, this line of reasoning loses weight when it is recalled that the defendant acquitted on that count was convicted on another.

 I do not deem it necessary to discuss the facts further but considering all those disclosed, I am unable to reach any conclusion except that the communication can not be said to have been harmless and I am not convinced that the defendants have received a verdict at the hands of a jury acting entirely free from improper influences. I arrive at this conclusion without invoking the rule laid down in the Wheaton case, supra, under which the presumption must be rebutted by evidence. It is true that in answer to questions propounded by me over the objection of defendants, the jurors who testified expressed the opinion that the information did not influence the verdict. All persons are influenced in some way in arriving at decisions and it is difficult, if not impossible, to know just what particular fact or event influences one in arriving at a conclusion. See Stone v. United States, supra. It is my view that the opinions of the jurors upon that point may be considered but may not be accepted to such an extent that the Judge should base his conclusion entirely thereon. I am not sure that I was free of error in propounding the questions. See Mattox v. United States, supra, 146 U.S. at page 148, 13 S.Ct. at page 52, 36 L.Ed. 917. However I have considered this testimony and in view of the conclusions reached believe my error, if it be error, is harmless.

 I am not unmindful of the practical consequences which might flow from a ruling to the effect that any effort to approach a juror by outside influences is ground for a new trial. It may result in a situation to be taken advantage of by unscrupulous defendants and their friends. See Klose v. United States, 8 Cir., 49 F. 2d 177, at page 181. The views here expressed are not to be construed as stating such rule. I go only so far as to say that when such situation arises the Judge should carefully scrutinize all the facts available and then determine whether the defendants have received a fair and impartial trial, free of improper, prejudicial influences.

It is my opinion that the defendants acted with sufficient promptness when first apprised of the facts and have waived none of their rights.

For the reasons stated, I conclude that the motions for a new trial should be granted.