STATE OF NEW JERSEY, PLAINTIFF, v. MILTON YORMARK, STANLEY PERWIN, ROBERT MULVANEY, J. L. BRIZARD, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 12, 1972.

*Mr. Alan Silber,* Assistant Prosecutor, appeared for *Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney.

*Mr. Richard A. Walsh,* attorney, appeared for defendant Stanley Perwin.

*Mr. Stephen N. Dermer,* attorney, appeared for defendant Robert Mulvaney.

JOHNSON, J. S. C.  The four defendants named above were charged with conspiracy to obtain money under false pretenses and the defendants Yormark and Perwin in addition were charged with obtaining money by false pretenses. After a protracted trial the defendants, on January 8, 1971, were found guilty of the various charges by a jury and thereafter each of the defendants was sentenced to a custodial term in the County Penitentiary and fined.

Following the entry of judgment the defendants appealed to the Appellate Division of the Superior Court which affirmed the various convictions.

Three of said defendants filed a petition for certification to the New Jersey Supreme Court which denied the same.

On February 2, 1972 the defendants applied for a stay of sentence to permit them to apply to the Supreme Court of the United States. This stay was granted until March 20, 1972. On March 6, 1972 an application for a stay of sentence was made to said Court which application was denied on March 15, 1972.

On March 17, 1972 a motion was made to this court for a new trial on the ground of newly discovered evidence alleging that the verdict of the jury had been improperly influenced as set forth in an affidavit attached to the notice of motion.

Thereafter this court took testimony on many days and heard the arguments of counsel. Counsel have also submitted briefs which have been considered.

The defendants herein have presented evidence from which this court concludes that after all parties had announced to the court they rested and during the summation an overnight recess was taken. The next morning one of the jurors conferred with the trial judge and advised him that an attempt had been made to have the wife of said juror intercede with said juror on behalf of one of the defendants. Thereafter said juror was interrogated in open court, outside the presence of the other jurors. The juror stated he would not be prejudiced thereby. The defendants moved to dismiss the juror. The trial judge denied said motions and permitted the juror to remain as a member of said jury but admonished him not to disclose the alleged incident to the remaining jury members. After the completion of the summations and charge of the court a jury of 12 was selected pursuant to R. 1:8-2(c) and the juror in question was chosen as one of the 12 to decide the issues in said case.

On this motion the defendants contend that during the deliberations of said jury the juror in direct violation of the court's admonition disclosed to some or all of the other jurors that an attempt had been made to influence him. They argue that this misconduct on the part of the juror is capable of tainting the verdict and that said verdict should be set aside. In support of this contention the defendants cite as authority several decisions of this State as well as the federal courts and the Supreme Court of the United States. Among these decisions are *State v. Kociolek,* 20 *N. J.* 92 (1955); *State v. Levitt,* 36 *N. J.* 266 (1961); *State v. La Fera,* 42 *N. J.* 97 (1964); *Remmer v. United States,* 347 *U. S.* 227, 74 *S. Ct.* 450, 98 *L. Ed.* 654 (1954); *Stone v. United States,* 113 *F.* 2d 70 (6 Cir. 1970); *United States v. Rakes,* 74 *F. Supp.* 645 (E. D. Va. 1947).

The State, in opposing said motion, does not deny that the alleged misconduct of the juror might have improperly influenced his fellow jurors but argues that the alleged misconduct of the juror was not only improperly instigated by the alleged misconduct of the defendants but was thereafter "discovered" by the continued allegedly improper conduct of the defendants. The State argues that the defendants violated a rule promulgated by the Supreme Court of New Jersey and for that reason no evidence of taint, if it existed, should be permitted to be used by such a defendant to attain that which he would have attained if his first alleged act of misconduct had been successful.

*R.* 1:16 of the *Rules of General Application* entitled *Miscellaneous Limitations on Attorneys and Parties* reads in section 1:

Except by leave of court granted upon good cause shown, no attorney or party shall himself or through any investigator or other person acting for him interview, examine or question any grand or petit juror with respect to the verdict or deliberations of the jury in any action.

Following the filing of the motion for a new trial by the defendants the State filed a motion for permission to examine the jurors. At that time this court noted there was a strong public policy against probing into jury verdicts. Jurors are to be protected against efforts to browse among their thoughts in search of something to invalidate their verdicts and this court stated it would not permit interrogation of any jurors until it could decide how and where the interrogation that apparently had taken place had its genesis.

The court now has had the benefit of the tapes used to record portions of the interviews held with the jurors, transcripts of those tapes prepared at the order of the court by a certified court reporter, and oral testimony taken in open court in the presence of all counsel. The court has had the benefit of observing the demeanor of the various witnesses and is satisfied therefrom that the witness Ronald Porambo was requested by the defendant Milton Yormark to hold said interviews in a planned effort to obtain sufficient information to attempt to set aside the verdict returned by those jurors.

Although the witness Porambo testified that he was simply working on a journalistic assignment and during his interviewing of the jurors in question he uncovered the information which forms the basis of the motion for a new trial, I do not believe his testimony.

Evidence, to be believed, must not only proceed from the mouth of a credible witness, but it must be credible in itself—such as the common experience and observation of mankind can approve as probable under the circumstances. We have no test of the truth of human testimony, except its conformity to our knowledge, observation and experience. Whatever is repugnant to these belongs to the miraculous, and is beyond judicial cognizance. Evidence is generally considered improbable when it imputes to the parties to a transaction, occurring in the ordinary course of business,

conduct inconsistent with the principles by which men, similarly situated, are usually governed. *Daggers v. Van Dyck,* 37 *N. J. Eq.* 130 (Ch 1883).

The manner in which the witness Porambo testified, his inappropriate laughter during his examination, his hedging when asked direct questions on specific points and his failure to articulate his reasons for the various interviews belies his true purpose. If he were on a journalistic mission as he testified, why did he not complete it rather than turn over the tapes to a defendant with whom he had no connection, as he contended?

There was also produced the testimony of several members of the bar who testified they had nothing to do with the actions of Porambo and were unaware of what he was doing until after he had done it. I am satisfied these attorneys did not initiate the interviews but I am not satisfied they told "the whole truth and nothing but the truth." These attorneys are men of vast experience. They knew that what Porambo was up to was something they could not be associated with and so they simply closed their eyes in the hope it would go away.

While the State argues that the evidence shows the fine hand of an attorney directing the actions of Porambo and asks the Court to infer that those directions were given by the various attorneys who represented the defendants, I do not so find. The legal directions followed by Porambo were supplied by the defendant Milton Yormark who it must be noted has disappeared and has failed to surrender himself to the Sheriff as required.

The principal question raised on this motion is an interesting and novel one—one which requires a balancing of equities. No person should be convicted as the result of impropriety or prejudice. It cannot be said that for a juror to state to his fellow jurors that an attempt to influence him had been made, whether that be the truth or not, has no impact on that juror or the others to whom the informa-

tion is imparted. In all jurisdictions where fairness and justice reign a verdict tainted by such information should be set aside.

On the other hand the people are also entitled to justice. To permit an accused or someone acting on his behalf to attempt to influence jurors would thwart all justice and prevent all convictions. Should such actions go unstopped? To permit an accused to view members of a jury over a long trial (as here for five months) and see if he thinks one might be approachable and then to contact that juror, would scrap the entire administration of justice.

To compound the problem it would be unthinkable that such an accused be permitted to set aside his conviction by bringing to the attention of the Court his wrongdoing in attempting to influence a juror. Justice must require greater protection for society than that. The Supreme Court stated in *State v. La Fera, supra,* "when contending values clash in their demands, a balance must be struck, and the balance struck is not to be shown a poor one because in some unknowable cases there may be an injustice." 42 *N. J.* at 107.

To permit these defendants to benefit by their own wrongdoing simply shocks my sense of fairness and justice. I for one cannot be a party to that disregard for the rights of so many. It is apparent to me that the conspiracy of which these defendants were convicted did not terminate with their apprehension. The defendant Yormark has continued to work for the benefit of his co-conspirators and while they may not have been privy to the entering of said plot by Porambo they should not benefit by his nefarious acts. The only effective method of preventing such conduct is to suppress the use of that which was learned improperly.

The motions made by the respective defendants for a new trial are denied as are the motions for bail. The motion by the State for permission to interview the jurors is likewise denied. Orders consented to as to form by all counsel should be submitted.