## Richmond

ANTHONY ALONZO ELLIS

V.

COMMONWEALTH OF VIRGINIA

Record No. 830514.

June 15, 1984.

Present: All the Justices.

*Johnny C. Cope (Saunders, Carleton, Morrison, Stephenson & Spratley*, on brief), for appellant.
*Robert B. Condon, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

The question for decision in this case is whether the trial court erred in denying a motion for mistrial based upon a communication between the trial judge and a juror in the absence of the defendant and his counsel.

The defendant, Anthony Alonzo Ellis, was indicted for distributing heroin. He was convicted by a jury on November 22, 1982, and his case was continued for sentencing to December 27, 1982.

On December 7, 1982, defense counsel filed a motion for mistrial. The motion alleged that one of the members of the defendant's jury (1) was intoxicated during the trial, (2) was asleep

through a "large portion" of the trial, and (3) was interviewed by the trial judge during a recess without notice to, and in the absence of, the defendant and his counsel.

The trial court heard the mistrial motion on the date set for sentencing. During the hearing, the defendant submitted testimony showing that the juror in question "nodded off" twice during the trial for a "few seconds" on each occasion. Further testimony showed that the juror had an odor of alcohol "emanating form his person" during the trial but that he was "very coherent" and gave no other indication that he was "under the influence of anything." Other testimony revealed that, during a recess, the bailiff escorted the juror from the jury room to the judge's chambers, where the juror stayed for approximately two minutes.

When defense counsel indicated he had no further evidence to present on the motion for mistrial, the judge said he thought it was "incumbent upon the Court to make a statement." The judge stated that he had observed the juror in question and noticed "his head drop and his eyes close . . . a couple of times . . . during the [state] chemist's testimony." The judge said further that, "rather than embarrass the gentleman" before everyone in the courtroom, he declared a recess and directed the bailiff to "take the jury out" and to escort the particular juror to chambers.

Continuing, the judge stated the juror admitted he had been "dozing" because "short of sleep" as a result of his work. The judge told the juror that "this was a very serious case and that he would have to stay awake." The juror indicated that he "could do so." Then, detecting "a slight odor of alcohol about [the juror]," the judge inquired whether he had been drinking. The juror denied having anything to drink that day, but said he "did drink some the day before." Satisfied with this explanation, but still concerned whether the juror could "remain awake," the judge told the juror that he "had to stay with things," impressing upon him "the importance of [the] trial to the defendant" and the "heavy penalty [which] could be given if [the defendant] was found guilty." The juror "assured [the judge] that he would [stay with things]."

At the conclusion of the hearing, the trial court denied the motion for mistrial. The court then sentenced the defendant to serve twenty years in the penitentiary and to pay a fine of $15,000, in accordance with the jury's verdict.

■ On appeal, the defendant concedes the evidence did not support his allegations that the juror in question was intoxicated and had slept through a "large portion" of the trial. The defendant argues, however, that "alcohol was indeed affecting [the juror]" because he fell asleep twice and, therefore, did not hear "all the evidence presented."

We reject this argument. The trial judge's statement, which we take at face value, shows that a "slight odor of alcohol" was the only indication the juror gave of having partaken of ardent spirits. The judge was satisfied with the juror's denial of drinking on the day of trial, and the judge found specifically that the juror was "in condition to try [the] case as far as sobriety was concerned." Hence, there was no reason to believe that alcohol affected the juror to the extent of impairing his "reasoning powers," inflaming his "passions," or influencing his "opinions." *Thompson v. Commonwealth*, 49 Va. (8 Gratt.) 637, 659 (1851).

Furthermore, according to the judge's statement, the juror let "his head drop and his eyes close . . . a couple of times" during the testimony of the state chemist. At the point in trial when the judge declared a recess to talk to the juror, the chemist had not testified to anything of substance, having only recited her credentials and identified the envelope in which she received the drug samples involved in the case. During the recess, the juror assured the judge he could and would stay awake during the balance of the trial; and, as the judge stated, "he was all right after that."

Whether the juror was indeed of sufficient sobriety and wakefulness to continue with the trial was a matter within the sound discretion of the trial court. We will not disturb the trial court's action in the absence of a clear abuse of discretion; we find no abuse in this case.

■ With respect to the third ground, *viz.*, the juror was interviewed by the trial judge without notice to, and in the absence of, the defendant and his counsel, the defendant argues that this action violated his right under Code § 19.2-259 to be "personally present during the trial." Citing *Bilokur v. Commonwealth*, 221 Va. 467, 469, 270 S.E.2d 747, 749 (1980), the defendant states that the statutory phrase "during the trial" means " 'every stage of the trial from [the accused's] arraignment to his sentence, when anything is to be done which can affect his interest.' "

The defendant opines that the juror "must have been intimidated and could have deduced from the judge's statement relative

to a heavy penalty that the judge felt [the defendant] was guilty and deserved a lengthy sentence." The defendant asserts further that the judge's statement "could have also easily affected [the juror's] interpretation of the evidence, and he may have consciously or unconsciously felt he should convict and impose a heavy sentence to appease the judge."

We disagree with the defendant. We do not believe that the trial judge's conference with the juror constituted a part of the defendant's trial, within the meaning of Code § 19.2-259. Rather, we think that the judge's action was merely administrative in nature and, accordingly, that he was not obligated to notify the defendant and his counsel in advance of the conference or to advise them afterward what took place in chambers. This duty of notification and advice arises only when "an *ex parte* communication relates to some aspect of the trial." *Rushen* v. *Spain*, 464 U.S. 114, 119 (1983).

Furthermore, the trial judge's remarks were innocuous. As we read the record, the trial judge merely sought to impress upon the juror the necessity to hear and consider every word of testimony before deciding whether to convict the defendant. And, in telling the juror that the case was a serious one carrying a heavy penalty, the judge only stated what was fact. Indeed, in a few moments, the judge would tell all the jurors in a formal instruction that if they found the defendant guilty, they should fix his punishment "at a term of imprisonment of not less than five (5) nor more than forty (40) years and a fine of not more than $25,000.00."

As indicated previously, the trial judge's action in conferring with the juror was merely administrative in nature. In this connection, we adopt the following observation from *United States* v. *Woodner*, 317 F. 2d 649, 652 (2d Cir. 1963): "We have enough confidence in the integrity and fairness of the [circuit court judges of this Commonwealth] to assume that they will not make unfair remarks to jurors while undertaking administrative duties of this nature."

■ Finally, the defendant argues that, under the holding in *Rushen* v. *Spain*, an undisclosed communication between a judge and a juror amounts to constitutional error. The defendant then cites *Chapman* v. *California*, 386 U.S. 18 (1967), where the Supreme Court ruled that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24.

We note that, in *Rushen* v. *Spain*, the Court did not hold that an undisclosed communication between a judge and a juror amounts to constitutional error; the Court said that "[b]ecause [it found] that no actual prejudice was shown, [it would] assume, without deciding, that [the prisoner's] constitutional rights to presence and counsel were implicated in the . . . case." 464 U.S. at 118 n.2. The Court then indicated that "the alleged constitutional error [was] harmless beyond a reasonable doubt." *Id.* at 121.

We make the same assumption concerning the constitutional error alleged by the defendant in this case, without deciding the point. And, experiencing no difficulty at all, we hold that any such error was harmless beyond a reasonable doubt.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed*