## Norfolk

CYNTHIA ANN ROYAL

v.

COMMONWEALTH OF VIRGINIA

No. 0012-85

Decided March 18, 1986

COUNSEL

Oldric J. LaBell, Jr., for appellant.

Leah A. Darron, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Cynthia Ann Royal (appellant) appeals from a judgment of the Newport News Circuit Court (trial court) wherein she was convicted by a jury of the first degree murder of Otto Drew (Drew), and sentenced to a forty year prison term.

Appellant asserts that the jury verdict should be set aside and a new trial granted. She alleges that the trial court erred: (1) when it allowed three juveniles to testify at the trial; (2) when it refused a defense instruction regarding an out-of-court statement made by a juvenile witness which was used to refresh the witness' recollection at trial; (3) when it refused a defense instruction relating to appellant's intoxication at the time of Drew's death; (4) when it granted an instruction providing that a person at fault must retreat prior to the use of force in self defense; (5) when it granted an instruction providing that words alone are not sufficient provocation to reduce a homicide to manslaughter; (6) when it did not, at the end of the first day of trial, instruct the jury to avoid media coverage of the trial and subsequently authorized the bailiff to contact each juror at home and give such admonition; and, (7) when it refused a motion to set aside the jury verdict or allow post trial questioning of a juror who allegedly gave a false reply to a pretrial *voir dire* question.

The matter having been submitted to a jury whose verdict was adverse to the appellant, on appeal the evidence is to be viewed most favorably to the Commonwealth. *See Toler* v. *Commonwealth*, 188 Va. 774, 782, 51 S.E.2d 210, 213 (1949). That evidence is as follows:

On May 1, 1984, Otto Drew went to the home of Carol Deloatch (Deloatch) who was a mutual friend of Drew and appellant. Drew was a bilateral amputee who had been fitted with artificial legs. Present in Deloatch's home when he arrived were Deloatch and her children (Edward Woods, age 13, and Arnita Woods, age 10), James Artis, and appellant and her daughter, Latrice Royal, age 6.

Drew seated himself in a chair at the entrance to the dining area where the four adults proceeded to drink wine for approximately one hour. During this hour, appellant and Drew exchanged "slaps." They did not appear to be angry but were not laughing.

A short while later the group disbanded within the apartment. Appellant went into the bathroom; Deloatch went to her bedroom; Artis and Edward Woods went to the children's bedrooms; and Drew remained in the living room area with Arnita Woods and Latrice Royal. In the presence of only those two children, Drew produced a pocketknife, displayed it to them and said: "I told you nobody'll be hitting on me."

Latrice ran to the bathroom and told appellant words to the effect that, "He's going to cut me." Appellant left the bathroom, went into the kitchen, procured a knife and stabbed Drew to death as he sat in the chair.

After the stabbing, James Artis took the knife from appellant and described her as being in a "panic rage." The police were summoned and found Drew's knife closed and in his shirt pocket.

Appellant testified and recited facts in conflict with the foregoing. The jury resolved the conflict unfavorably to appellant. "Discarding the evidence of the accused in conflict with that of the Commonwealth, we must regard as true the Commonwealth's evidence and all fair inferences to be drawn therefrom." *Id.*

I.

■ Before presenting evidence to the jury, the Commonwealth informed the trial court of its intention to call as witnesses Edward Woods, Arnita Woods and Latrice Royal, each of whom are juveniles. The trial court then permitted a *voir dire* of each child on the issue of competency to testify. No objection was made to the competency of Edward Woods and Latrice Royal. Having made no objection to the competency of Edward and Latrice, appellant may not raise the issue as to those two on this appeal. Rule 5A:18.

At the conclusion of the *voir dire* of Arnita Woods, appellant objected "for the record" to her competency to testify without stating any reason for this objection. If an objection is to be considered on appeal, the ground therefor must be stated. Rule 5A:18. The words "for the record" do not constitute such ground.

■ While Arnita was testifying, she failed to recall some of the details of the events which occurred in her presence at the time of

the homicide. Appellant then made a further objection to her competency. Prior to permitting her to testify, both counsel and the trial court participated in the *voir dire* of Arnita. At the time of her testimony she was ten years of age.

> There is no specific age at which a child must have arrived in order to be competent as a witness. A child is competent to testify if it possesses the capacity to observe events, to recollect and communicate them, and has the ability to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth.

*Cross* v. *Commonwealth*, 195 Va. 62, 64, 77 S.E.2d 447, 449 (1953); *see also* 2 Wigmore, *Evidence* § 506, at 712 (Chadbourne rev. 1979); 3 S. Gard, *Jones on Evidence* § 20:10, at 604 (6th ed. 1972).

The *voir dire* clearly discloses that Arnita possessed the capacity to observe, recollect and communicate what she observed and was well aware of her duty to speak the truth.[1] Upon the conclusion of the *voir dire*, the trial court correctly found her competent to testify. It was not error for the trial court to continue to hold that she was competent notwithstanding that fact that she did not recall every detail of her May 1, 1984, observations. *See Kiracofe* v. *Commonwealth*, 198 Va. 833, 840-43, 97 S.E.2d 14, 18-21 (1957).

We observe that when children testify, judicial inquiry into the issue of the capacity of the child to give testimony must be searching in proportion to chronological immaturity. *See generally Rosche* v. *McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). Yet the question of the competency of a child as a witness, to a great extent, rests on the sound discretion of the trial court whose decision will not be disturbed unless the error is manifest. *Cross* v. *Commonwealth*, 195 Va. 62, 64, 77 S.E.2d 447, 449 (1953); *Rogers* v.

---

[1] A summary of portions of her responses discloses that she clearly stated her name, address and age; that she knew she was in court to testify; that she demonstrated that she knew to tell the truth was right, and to lie meant to tell a story and possibly be punished; she knew the school she attended, the class she was in and the good grades she had earned; she proved that she knew left from right and demonstrated an ability to count; she knew that the homicide had occurred in her home and stated its address; and succinctly denied that she had been "coached" concerning her testimony, stating that she should not do so because she might be repeating a lie.

*Commonwealth*, 132 Va. 771, 773, 111 S.E. 231, 231 (1922); *see Mullins* v. *Commonwealth*, 174 Va. 472, 5 S.E.2d 499 (1939). Here, it is manifest that the trial judge's ruling was correct.

## II.

Unexpectedly, Arnita was unable to say whether Drew was seated or standing when he was stabbed. Because she previously had made a clear statement to the police that Drew was "sitting down" when stabbed, the Commonwealth sought to show the statement to Arnita "to try to refresh her memory." After reviewing the statement out of the presence of the jury, the trial court ruled that the statement could not be used to "question her credibility" but could be used "to refresh her memory."

In the presence of the jury the statement was shown to Arnita. After she had read the statement she was further questioned by counsel for the Commonwealth and the defense. Although she acknowledged that it contained certain statements concerning Drew's position and the presence of a knife, she did not state clearly that she then remembered those statements to be correct.

As a result of the Court's ruling permitting the statement to be shown to Arnita, defense counsel requested the trial court to grant the following instruction:

During the trial evidence was introduced that a witness had previously made a (written) statement (given testimony) that was inconsistent with this testimony at this trial. *The only purpose for which that evidence was admitted was its bearing on the witness' credibility.* It is not proof that what the witness may have said earlier is true. (emphasis added).

The statement was not admitted for the "purpose" of "bearing on the witness' credibility." It was for the limited purpose of refreshing the witness' memory. Under the facts and circumstances of this case, the instruction was properly refused, and the trial court was under no duty to correct or amend it.

## III.

■ The trial court also refused an instruction proffered by appellant which would not permit the jury to return a first degree murder verdict if they found appellant to be so intoxicated at the time of Drew's death that she was incapable of deliberating or premeditating. In her trial testimony, appellant steadfastly maintained that she was not drunk. Deloatch said that on the morning of Drew's death she (Deloatch) was not drunk, and appellant did not appear intoxicated. To justify an instruction on voluntary drunkenness, the evidence must show more than the mere drinking of alcohol, and even if an instruction correctly states the law, if it is not applicable to the facts and circumstances of the case it should not be given. *Hatcher* v. *Commonwealth*, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978). We hold that there was not sufficient evidence in the record to support appellant's request, and that the trial court committed no error when it refused the proffered instruction.

## IV.

Based on the evidence presented, at the request of the appellant, the trial court granted as Instruction No. 24 a standard of self defense instruction on justifiable homicide.[2] Other evidence presented at the trial, however, if believed, disclosed that appellant was "with some fault" in bringing about the confrontation. For this reason, the Commonwealth tendered and was granted as Instruction No. 24A an excusable homicide instruction as authorized by *Perricllia* v. *Commonwealth*, 229 Va. 85, 93, 326 S.E.2d 679, 685 (1985).[3] Considering all of the evidence in this case, we find no error in the granting of this instruction.

## V.

A portion of the evidence of the Commonwealth disclosed that some words may have been uttered by Drew which could have caused appellant to believe that either she or her daughter was

---

[2] This instruction was taken from I *Virginia Model Jury Instructions (Criminal)*, Instruction No. 15, p. I-477.

[3] Instruction No. 24A, which was granted, was based on I *Virginia Model Jury Instructions (Criminal)*, Instruction No. 16, p. I-481.

being threatened by Drew.

■ As a result, the following instruction was granted at the request of the Commonwealth on the issue of provocation and voluntary manslaughter: "Words alone, however insulting or contemptuous, are never a sufficient provocation to have the effect of reducing a homicide to manslaughter." The appellant claims that this instruction was erroneous. We disagree. "In order to justify an accused in striking another with a deadly weapon . . . a threatening attitude alone affords no justification." *Harper* v. *Commonwealth*, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955). The words attributed to Drew, if believed, may have been grievous or provoking, but were not sufficient to reduce the charge from murder to manslaughter. *See Read* v. *Commonwealth*, 63 Va. (22 Gratt.) 924, 938 (1872). The Commonwealth is entitled to instructions based on its theory of the case. *Oliver* v. *Commonwealth*, 151 Va. 533, 542, 145 S.E. 307, 309 (1926). In view of the evidence presented on behalf of the Commonwealth, the trial court properly granted the instruction.

## VI.

At the end of the first day of trial, the trial court excused the jury with the following statement:

Ladies and Gentlemen, you're excused to return tomorrow morning at 11:00 a.m. Do not discuss the case with anyone or permit anyone to discuss the case with you or do not discuss the case among or between yourselves and come back tomorrow morning and do not go to the scene of where these events took place. And when you come tomorrow, go directly from the elevator to the jury room.

The trial court then asked each counsel whether further admonition was necessary, and each said no.

Later, after adjournment, the trial court remembered that its admonition at the end of the day did not include a warning to avoid media coverage. Although earlier admonitions and a juror's handbook covered the point, the court authorized its bailiff to contact each juror at home and deliver the admonition.

When the proceedings commenced on September 14, 1984, the bailiff reported reaching eight of the twelve jurors. The trial court then conducted an individual *voir dire* of each juror, and one of them admitted exposure to a radio report about the trial. However, the juror stated that she turned off the radio prior to hearing the report's substance. It was not until after the jury had returned its verdict that appellant voiced any objection to the contacts made by the bailiff out of appellant's presence or to the continued participation in the trial by the juror who had been exposed to the radio report. Under the facts and circumstances of this case, we hold that the appellant has waived any right she may have had to be present when the jurors were contacted or to object to the court's ruling allowing the juror to remain on the panel. *Cf. Jones v. Commonwealth*, 227 Va. 425, 429-30, 317 S.E.2d 482, 484-85 (1984).

> It has been well said that there is no such thing as a perfect trial. Every man is entitled to a fair trial and to nothing more.

*Oliver* v. *Commonwealth*, 151 Va. 533, 541, 145 S.E. 307, 309 (1928).

Here the defendant received a fair trial. If the complained of directive by the trial court to the bailiff was error, it was harmless. Additionally, there has been no showing that the actions taken by the trial court in any way prejudiced appellant's cause.

## VII.

Following the return of the jury's verdict, appellant's mother and sister, who observed portions of each day's proceedings, informed defense counsel that they recognized a juror as a family acquaintance. Defense counsel then questioned appellant, who stated that she, too, recognized the juror. Defense counsel promptly notified the trial court of this development.

The trial court then heard testimony from appellant's sister, her mother, and appellant regarding their knowledge of the juror. The juror had answered negatively along with the other venire members to a pretrial *voir dire* question as to whether they had any knowledge or social relationship either with the defendant, Cynthia Royal, or the decedent, Otto Drew.

Appellant's sister testified that she recognized the juror during the trial. However, when she sought to discuss it with her mother, she received no response. She informed the court that she knew the juror as a neighbor during her childhood and had attended school with his son. Although she admitted that the juror has not been a neighbor for over ten years, she indicated that she still sees him occasionally and speaks to him.

Appellant's mother testified and established that the juror was her neighbor for a period of years prior to 1959. Although not neighbors since that time, they have lived in the same neighborhood, some two blocks distance, for a period since 1959. She admitted no communication with the juror since the 1960's; however, she stated that she recognized him at the outset of the trial.

Appellant then testified, and alleged that she did not recognize the juror *until the second day of trial.* She said nothing to defense counsel because, "My mind was mixed up. I was just hoping for the best and looking for the worse." She admitted that she has not lived near the juror since 1975, but said that she speaks to him during occasional encounters.

Appellant acknowledged that defense counsel reviewed the jury list with her prior to jury selection, and that she stated no objections. The jury list contained the juror's name, address, age, telephone number, and the occupation from which he retired.

Appellant told the trial court that she failed to pay attention before and during jury selection, when at various times the juror's name was announced and he stood for roll call. She added that during the trial, she vaguely recognized three other jury members.

The trial court made no formal ruling on this matter that day, but granted defense counsel leave to pursue the matter further. The court held in abeyance a ruling on whether the juror would be summoned to explain his *voir dire* answer.

On October 18, 1984, defense counsel filed a motion to set aside the jury verdict on the basis of the juror's alleged failure to answer honestly the *voir dire* question. At the November 5, 1984 presentence hearing, the trial court considered and denied the motion.

The trial court found appellant sufficiently intelligent to understand and articulate her interests in the matter. It then ruled that she had waived her objection to the juror's potential incompetency and said:

> The Court finds that the Defendant knew at the time and prior to the time of the selection of the jury that [the juror] was one and the same person who was formerly a neighbor and/or acquaintance of hers and the Court finds that notwithstanding that fact, the Defendant deliberately and knowingly elected not to bring the information concerning [the juror] to the Court's attention prior to the verdict . . . . The Court is of the opinion and concludes that the Defendant has waived her right to seek a new trial on said grounds. (clarifications added).

■ The trial court's findings of fact on this issue are entitled to great weight, and we find them to be supported by the record. *See Satterwhite* v. *Commonwealth*, 201 Va. 478, 483, 111 S.E.2d 820, 823-24 (1960). A defendant's objection to a juror's competence after a guilty verdict generally comes too late:

> In *Bristow's Case*, 15 Gratt. (56 Va.) 648, this is said: "To permit prisoners to avail themselves, after verdict, of preexisting objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences. The delays in the administration of criminal justice, and the chances for the escape of the guilty, would be greatly increased. Proper verdicts, especially in trials for grave offenses, would be continually set aside. A prisoner knowing, or willfully remaining ignorant of the incompetency of a juror, would take the chances of a favorable verdict, with him upon the jury; and if the verdict should be adverse, would readily enough make the affidavit necessary to avoid its effect."
>
>       \*     \*     \*
>
> The trial court has a discretion when such motions are presented, subject to review by this court, which will not be interfered with unless it appears that some injustice has been done.

*Allen* v. *Commonwealth*, 122 Va. 834, 845-46, 94 S.E. 783, 787 (1918); *see also Hite* v. *Commonwealth*, 96 Va. 489, 496, 31 S.E. 895, 897 (1898). If the juror in question was in any way incompetent to serve, we hold that appellant waived her objection to such incompetency. *United States* v. *Breit*, 712 F.2d 81, 83 (4th Cir. 1983); *Gray* v. *Hutto*, 648 F.2d 210, 212 (4th Cir. 1981).

When a judgment of the court is entered, whether following a trial by jury or before the court, it will not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it. Code § 8.01-680. Here, there is ample evidence to support the judgment against appellant.

Accordingly, finding no error in the judgment appealed from, that judgment is affirmed.

*Affirmed.*

Hodges, J., concurred.

Barrow, J., concurring.

I do not agree with the majority's conclusion that the bailiff's communication with eight jurors out of the presence of the defendant was harmless. Since the record does not reveal what the bailiff said to them, this conclusion is not supported by the record.

The trial court's diligent effort to assure that the jury would avoid media coverage of the trial created two problems: First, the bailiff's instruction to the jurors was made out of the presence of the defendant. *See* Code § 19.2-259; *Quintana* v. *Commonwealth*, 224 Va. 127, 145, 295 S.E.2d 643, 652 (1982); *Lewis* v. *Commonwealth*, 212 Va. 411, 412, 184 S.E.2d 818, 819 (1971); *Palmer* v. *Commonwealth*, 143 Va. 592, 605, 130 S.E. 398, 402 (1925). Second, the record does not disclose what the bailiff said to the jurors. *See Mattox* v. *United States*, 146 U.S. 140, 150 (1892); *Gray* v. *Hutto*, 648 F.2d 210, 211 (4th Cir. 1981); *United States* v. *Rakes*, 74 F. Supp. 645, 648 (E.D. Va. 1947).

Standing alone, the trial judge's failure to instruct the jury to avoid media coverage and his action in instructing the bailiff to contact each juror at home and give such an admonition were harmless beyond a reasonable doubt, *see Rushen* v. *Spain*, 464 U.S. 114, 119-20 (1983); *Ellis* v. *Commonwealth*, 227 Va. 419,

424, 317 S.E.2d 479, 481-82 (1984); however, the record does not reveal what the bailiff actually told the jurors. Therefore, we cannot conclude from this record that the communication was harmless.

However, reversal is not required. Responsibility for this omission from the record lies with the defendant and her counsel. Immediately upon opening court on the second day of trial the trial court advised the attorneys and the defendant what had happened the preceding evening. He also initiated and carried out an examination of each of the jurors to learn if they had received any news information of the trial. The defendant made no objection to the trial court's action nor did counsel examine the jurors to ascertain the content of the bailiff's communication. By failing to examine the jurors and by failing to object to the court's action, *see* Rule 5A:18, the defendant prevented the trial court and this court from evaluating the impact, if any, of the bailiff's communication to the jurors. Consequently, the defendant by her passive acquiescence waived her right to object to the trial court's procedure. *See United States v. Gagnon*, 105 S. Ct. 1482, 1485 (1985); *Gray v. Hutto*, 648 F.2d 210, 211 (4th Cir. 1981).

I otherwise concur with the majority's opinion and agree that the judgment should be affirmed.