# Richmond

CHARLES TOLER, JR. v. COMMONWEALTH OF VIRGINIA.

January 10, 1949.

Record No. 3476.

Present, Hudgins, C. J., and Gregory, Spratley, Buchanan, Staples and Miller, JJ.

*M. H. Hester* and *A. S. Hester*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Special Assistant to Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

At the May term, 1948, of the Corporation Court of the City of Lynchburg, the defendant, Charles Toler, Jr., was indicted for "unlawfully and feloniously" stealing, on the 12th day of April, 1948, a billfold, of the value of $5 and lawful money of the United States of America of the value of $17. The indictment further alleged that the defendant had been before sentenced for like offenses of petit larceny, —first in the Municipal Court of the said city on July 10, 1947, and, second, in the Corporation Court of the said city on November 3, 1947.

The defendant pleaded not guilty to the indictment. Upon the trial of that issue, the jury returned a verdict finding him guilty and fixed his punishment at two years in the penitentiary.

A motion to set aside the verdict on the ground that it was "contrary to the law and the evidence," was overruled, and judgment was pronounced in accordance with the verdict. We granted a writ of error and supersedeas.

The defendant contends that the evidence, wholly circumstantial, was insufficient to show that he was guilty of the larceny charged as of April 12, 1948, beyond all reasonable doubt. He argues that although the theft of the property may have been shown, there was nothing to connect the defendant with the crime, except mere conjecture or suspicion.

The evidence, certified to us in narrative form, was substantially as follows:

Witnesses on behalf of the Commonwealth testified that the defendant had been tried, convicted, and sentenced for petit larceny in the Municipal Court of the city of Lynchburg, Virginia, on July 10, 1947, and had been again tried, convicted, and sentenced for another offense of petit larceny

in the Corporation Court of the same city on November 3, 1947. The defendant offered nothing in denial or contradiction thereof. The facts of his former sentences were fully established.

The remaining evidence related to the charge of petit larceny as of April 12, 1948.

On Monday, April 12, 1948, at about 1:30 p. m., Mrs. Ossie Wingfield returned from her lunch to the offices of Drs. Barksdale, Pugh and Haynesworth, her employers, on the ninth floor of the Allied Arts Building in Lynchburg. She put her pocketbook in a closet in the second room to the south of the reception office and across the hall from the elevator serving the building. She then left the room, leaving its door to the hall unlocked. In her pocketbook were a billfold containing a ten-dollar bill, a five-dollar bill, two one-dollar bills, and some small change. The closet in which it was left was about thirty feet distant from the elevator. Mrs. Wingfield returned to the room in which she left her pocketbook in about thirty minutes,— that is, about 2:00 p. m. She then found her pocketbook on a table in the room, with her billfold, money and keys gone.

At about 2:00 p. m. of the same day, Mrs. Eleanor Elder, a receptionist employed in the offices where Mrs. Wingfield worked, while sitting at her desk directly across the hall from the elevator, saw a colored youth standing at the elevator entrance waiting to enter it. She could only see the left side of his face, but noticed that he had on a maroon shirt, and that "his hair stood up in front." The elevator came up· and she saw him get on it. Immediately after this Mrs. Wingfield told her that someone had stolen her pocketbook and money.

Thelma Thornhill, a colored girl who operated the elevator, testified that at about 2:00 o'clock p. m., on the day in question as she was proceeding upward with the elevator, she noticed a colored boy standing in front of its opening on the ninth floor waiting to go down; that she stopped the elevator and the boy got in and went with the

elevator to the top floor and then came down with her and got out on the ground floor; that she had never seen him before, but she observed he had on a wine-colored shirt; and that immediately after he left, Mrs. Wingfield told her about the loss of her property.

Both of these witnesses said that, although the room in which the pocketbook was left opened on a hall open to the public, they did not see any person enter or leave that room during the absence of Mrs. Wingfield between 1:30 and 2:00 o'clock p. m.

The police authorities were notified and two police officers came to the ninth floor of the Allied Arts Building to investigate. Mrs. Elder and Thelma Thornhill both described to the police officers the man they saw on the ninth floor of their building about 2:00 p. m. The police officers left and in about two hours returned to building bringing the defendant with them. Mrs. Elder identified him as the same person she had seen waiting for the elevator. Thelma Thornhill positively identified him as the person described by her, and whom she had carried on the elevator from the ninth floor.

J. E. Franklin, a police officer, testified that he and a fellow officer received information of the loss of Mrs. Wingfield's money about eight minutes after 2:00 o'clock p. m. on April 12th; that upon receiving from Mrs. Elder and Thelma Thornhill the description of a young colored man they had seen at the elevator at 2:00 o'clock p. m., they started looking for a person answering that description; that about an hour and a half later they found the defendant in a pool room sitting in a chair and wearing the character of shirt described; that they searched him and found two one-dollar bills and eighty cents in change in his trousers pocket, a ten-dollar bill and a five dollar bill in his shirt pocket buttoned up; and that the defendant said it was part of the money that he had received that morning, April 12th, from his father and a brother-in-law, but he could not say how much each gave him. The defendant further told the officers that he had not been in the Allied Arts Building during

that day, and disclaimed any knowledge of the loss of the billfold, the money, or the keys of Mrs. Wingfield.

The father, the stepmother, and a brother-in-law of the defendant testified that the defendant was at his father's house from about fifteen minutes to two o'clock to half-past two o'clock on the afternoon of April 12, 1948. The father said that he had paid the defendant $18 on the evening of April 10, 1948, for assisting him in his janitorial work, and that the brother-in-law of the defendant gave $5 to the latter on the same day.

The defendant, a young colored man nineteen years of age, testified that he was not in the Allied Arts Building on April 12, 1948, at any time. He said that he was asleep on that day when his father awakened him about 1:30 o'clock p. m.; and that he then went to his father's house a few minutes before 2:00 o'clock, changed his clothes, and left about 2:30 p. m. He said that he knew nothing about Mrs. Wingfield's money, billfold, or keys, and that he told the police officers that the money found on him was a part of $18 paid to him on Saturday, 10th of April, by his father for helping the latter in his work the week before, and that his brother-in-law gave him $5 at the same time.

It is true that the conviction of the defendant is based upon circumstantial evidence. While such evidence should be received with caution, it is legal and competent and entitled to the same weight as direct testimony if it is of such a convincing character as to exclude every reasonable hypothesis other that that the accused is guilty. It is often the only evidence which the nature of the case permits, and we have a rule of necessity that whatever may be established by direct evidence in a criminal case may also be established by circumstantial evidence. A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any. Evidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt. *Langford* v. *Commonwealth*, 154 Va. 879, 153 S. E. 821; *Abdell* v. *Common-*

*wealth*, 173 Va. 458, 2 S. E. (2d) 293; *Gilland* v. *Common-wealth*, 184 Va. 223, 231, 35 S. E. (2d) 130; 20 Am. Jur., Evidence, 271, *et seq*.

█ In Virginia, the weight of the evidence or the inferences to be drawn from circumstances, is always a matter for the jury, under propoer instructions from the court. When the circumstances lead to a satisfactory and certain conclusion to the exclusion of every reasonable hypothesis of innocence, this is sufficient to support a verdict of guilty. Where, after a fair trial, the jury has found a verdict of guilty and the circumstances proven are of such character as to warrant that finding, a motion to set aside the verdict on the ground that it is contrary to the evidence should be granted only when "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Virginia Code, 1942 (Michie), section 6363.

In all cases of circumstantial evidence the conduct of the accused is always an important factor in the estimate of the weight of circumstances which point to his guilt. Where a conviction rests upon circumstantial evidence, much weight is given to contradictory statements of material facts by the accused. Each should be considered along with the other facts and circumstances shown in evidence to determine whether, upon the whole case, the evidence excludes every reasonable hypothesis consistent with the accused's innocence. *Massie* v. *Commonwealth*, 140 Va. 557, 125 S. E. 146. See also, *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.) 912, 924.

█ The defendant was represented by competent counsel of his own choosing. The jury which saw and heard the witnesses found their verdict against him. The trial judge approved the verdict. With the foregoing principles in mind, we review the evidence not with respect to what action we might have taken as members of the jury, but as to whether the evidence justified the jury, as reasonable and fair-minded men, in finding the defendant guilty.

The direct and positive evidence was sufficient to justify the conclusion that the defendant was present on the ninth

floor of the Allied Arts Building shortly before the money was missed, and that he had an opportunity to commit the offense charged. The jury, as it had the right to do, refused to accept his alibi. He has failed to give any explanation of his presence in the building. If he had admitted his presence, an explanation for being there would have been necessary.

Within a short time after the theft, he was found with money of the same denominations and in the same amount as that which was stolen. While it is possible that money of the same amount and of like denominations may be possessed by many persons, only one of such persons was identified as being on the ninth floor of the Allied Arts Building at the time the money of Mrs. Wingfield was stolen.

Discarding the evidence of the accused in conflict with that of the Commonwealth, we must regard as true the Commonwealth's evidence and all fair inferences to be drawn therefrom. The proof of the fact of the defendant's presence in the building at the time of the crime, his failure to give a satisfactory explanation therefor, his untrue account of his whereabouts, and his contradictory statements as to how he came into possession of the money found on him furnish bases for reasonable inferences that his explanations were made falsely in an effort to conceal his guilt. The facts, accepted by the jury, admitted of inferences of guilt more probable and natural than of any reasonable hypothesis of innocence, and warranted the jury in rejecting his explanations as untrue. In other words, the facts established are consistent with his guilt and inconsistent with his innocence.

Under the circumstances before us, we are unable to say that the judgment against him is plainly wrong or without evidence to support it.

The defendant in this court, for the first time contends that the verdict of the jury was illegal and improper, in that the defendant was found guilty of petit larceny, a misdemeanor, but was given a punishment for a felony.

Under Rule XXII of this Court, this objection comes too late. However, it is without merit.

The indictment was drawn in accordance with Virginia Code, 1942 (Michie), section 4785.* In accordance with that statute, it charged a third offense of petit larceny, an offense which constitutes a felony. *Rider* v. *Commonwealth*, 16 Gratt. (57 Va.) 499. The defendant was tried, without exception, by a qualified jury consisting of twelve, the number required for the trial of a felony. Constitution of Virginia, section 8; Virginia Code, 1942, (Michie), section 4898.

The jury, by their verdict, found that the defendant was "guilty of petit larceny as charged in the within indictment." There was no contradiction of the fact that the defendant had been theretofore twice sentenced for the like offense of larceny. The punishment for a conviction of a third offense of larceny as charged in the indictment is confinement in the penitentiary not less than one nor more than two years. Upon being found guilty of a third offense, a jury may not lawfully impose a sentence less than one nor more than two years. By the infliction of a punishment in accordance with the statute, the jury, by necessary implication, found that the accused had been twice before sentenced for like offenses as charged in the indictment. The verdict was responsive to the charge and to the penalty provided by the statute. *Satterfield* v. *Commonwealth*, 105 Va. 867, 873, 52 S. E. 979; *McDorman* v. *Smyth*, 187 Va. 522, 47 S. E. (2d) 441.

In *Satterfield's Case, supra,* the indictment was laid under the identical statute here involved, then section 3907 of Virginia Code, 1904, (Pollard). The jury found the defendant "guilty as charged in the within indictment * * *," and

---

*"Code section 4785: When a person is convicted of petit larceny, and it is alleged in the indictment on which he is convicted, and admitted, or, by the jury or justice before whom he is tried, found, that he has been before sentenced in the United States for the like offense, he shall be confined in jail not less than thirty days nor more than one year; and for a third, or any subsequent offense, he shall be confined in the penitentiary not less than one or more than two years."

fixed his punishment at one year in the penitentiary. It was contended that the verdict did not expressly find that the defendant had been twice before sentenced for petit larceny. We held that the verdict fulfilled the demand of the statute in the particular referred to, distinguishing the case from that of *Thomas* v. *Commonwealth*, 22 Gratt. (63 Va.) 912.

In our opinion, however, we believe it would be better practice when convictions are found on an indictment under Code section 4785, that the jury expressly find on the issue as to the former sentences alleged in the indictment.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*