COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Annunziata
Argued at Richmond, Virginia

LUIS ANTONIO ORTEGA

                                    MEMORANDUM OPINION[*] BY
v.  Record No. 0713-94-2       JUDGE JAMES W. BENTON, JR.
                                       JANUARY 30, 1996
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     William R. Shelton, Judge

            John C. Jones, Jr. (Michael HuYoung; Jane
            Chittom; Shuford, Rubin & Gibney, on brief),
            for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (James S. Gilmore, Attorney General,
            on brief), for appellee.


     Luis Antonio Ortega appeals from his convictions for capital

murder and use of a firearm in the commission of capital murder.

Ortega contends the trial judge erred by admitting in evidence

his initial statement to the police and prohibiting him from

fully cross-examining a material witness.  We agree that the

trial judge improperly limited cross-examination, and we reverse

the convictions.

                                I.

     The evidence proved that shortly after 1:00 a.m.,

Chesterfield County Police Officer Henry Pletch received a call

concerning a suspicious vehicle.  When the officer examined the

vehicle that was parked in a wooded area near an automobile

service station, he learned that the vehicle was registered to

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Felicia Ward. As the officer was continuing his investigation, Ritchie Allred approached the vehicle from the direction of the service station. Allred told the officer that he was driving the vehicle, that he had been talking to friends at a nearby motel, and that he resided at the California Inn in room 202.

As the officer was talking to Allred, he received a report that two men had been seen jumping the counter at the service station. The officer told Allred, who did not fit the description of the men, to leave the area. When the officer arrived at the service station, he saw the cashier lying dead behind the counter with a gunshot wound in his chest. A gun was on the counter. During the investigation, the officer viewed a video tape from the service station's surveillance camera, and he recognized Allred and the cashier on the tape. He could not recognize two other men who appeared on the tape.

After learning of Allred and the vehicle in the woods, three officers went to the California Inn. At six o'clock that morning while the officers were watching the inn, they saw Luis Ortega and Marcus Johnson walk behind the inn and then toward the front without stopping at any doors. When the officers called to them, they approached the officers and talked. Ortega explained his activities and said that he and Johnson were going to room 202 to meet Felicia Ward.

The officers were aware that Allred drove Ward's vehicle from the woods near the service station. They also knew that

Allred said he was staying in room 202.  After one of the officers talked with Ward outside room 202, the officers ended their encounter with Ortega and Johnson.  One of the officers discovered that Allred was also in room 202 and interviewed him.  Based on information received from Allred, the officers stopped Ortega and Johnson and arrested them.

Following his arrest and after receiving <u>Miranda</u> warnings, Ortega confessed that he, Johnson, and Allred were riding in Ward's vehicle and planning a robbery.  Ortega said that he had a gun when they entered the service station.  He further said that his "mind went blank" when the cashier cursed him, pushed Johnson, and told them to leave the store.  He said that he did not want to shoot the cashier; however, the gun fired once because its hammer was cocked.

Ortega, who was fifteen years old, pled guilty to attempted robbery and use of a firearm in the commission of attempted robbery.  He was tried by a jury and convicted of capital murder and use of a firearm in the commission of capital murder.  He appeals his convictions for capital murder and use of a firearm in the commission of capital murder.

### III.

At trial during the Commonwealth's case-in-chief, a police officer testified concerning Ortega's initial conversation with the officers outside the inn.  Ortega's counsel objected and argued that the Commonwealth was proving evidence of Ortega's

character and veracity even though he had not testified. Counsel also asserted that Ortega had confessed to shooting the cashier and, thus, the defense of alibi was not at issue. The prosecutor argued that Ortega's state of mind was at issue and that any evidence tending to show his guilty state of mind was relevant. We conclude that the trial judge properly allowed the evidence.

The officer testified that Ortega said he and Johnson had been with Ward until five o'clock on the afternoon of the previous day. Ortega also said that he was again with Ward until ten o'clock the evening of the previous day. When he departed at ten o'clock, he and Johnson visited his friend Tamera. He told the officers that he and Johnson were just returning from Tamera's house, where they had been continuously after leaving Ward at ten o'clock.

Later, in its case-in-chief, the Commonwealth proved through Tamera's testimony that Ortega left her house eight hours before he talked to the police officers. The Commonwealth also proved that in his confession Ortega had admitted being in Ward's vehicle and at the service station.

"In Virginia, the weight of the evidence or the inferences to be drawn from circumstances . . . is always a matter for the jury." Toler v. Commonwealth, 188 Va. 774, 781, 51 S.E.2d 210, 213 (1949). A jury may properly consider an accused's contradictory or inconsistent statements to the police as circumstantial evidence demonstrative of a guilty state of mind.

See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

> In all cases of circumstantial evidence the conduct of the accused is always an important factor in the estimate of the weight of circumstances which point to his guilt. Where a conviction rests upon circumstantial evidence, much weight is given to contradictory statements of material facts by the accused. Each should be considered along with the other facts and circumstances shown in evidence to determine whether, upon the whole case, the evidence excludes every reasonable hypothesis consistent with the accused's innocence.

Toler, 188 Va. at 781, 51 S.E.2d at 213.

The Commonwealth had the burden to show Ortega killed willfully, deliberately and with premeditation. Code § 18.2-31(4). Ortega pled not guilty and, thus, put at issue his conduct and his state of mind at the time the killing occurred. Obviously, the jury was not required to believe in its totality the explanation Ortega gave in his confession.

After assessing Ortega's contradictory statements, the jury could have inferred that he was trying to conceal his guilt. Black, 222 Va. at 842, 284 S.E.2d at 610. The Supreme Court has clearly stated that an accused's "contradictory statements . . . [may] furnish bases for reasonable inferences that his explanations were made falsely in an effort to conceal guilt." Toler, 188 Va. at 782, 51 S.E.2d at 214. Thus, the trial judge did not err in admitting Ortega's contradictory pre-arrest statements as evidence tending to prove his state of mind and his

efforts to conceal his guilt.  See also Land v. Commonwealth, 211 Va. 223, 229, 176 S.E.2d 586, 590-91 (1970) (contradictory statements "which tended to show guilt, when considered with other evidence, were admissible").

Ortega also contends that the trial judge improperly limited his cross-examination of Richie Allred. Following Allred's conversation with the officers at the inn, Allred was arrested for murder, attempted robbery, and use of a firearm. All of those charges arose from the same incident for which Ortega was being tried. When Allred testified for the Commonwealth, those charges were still pending.

Allred testified on direct examination that he, Ortega, and Johnson lived together at the inn. On the night of the incident he drove Ward's vehicle to a wooded area and went with Ortega and Johnson to a nearby entertainment lounge. Later, he and Ortega walked to the service station to buy a soda. When they entered, the cashier cursed at Ortega and told him to leave the store. Allred testified that on a prior occasion the cashier had accused Ortega of shoplifting and had threatened to call the police. Allred also testified that after they left the store Ortega said that he felt like robbing the cashier. Allred testified that he told Ortega not to bother the cashier and that he did not believe Ortega was serious. He testified that he went back to the vehicle in the woods while Ortega and Johnson re-entered the gas station.

Allred further testified that he was unaware that Ortega had a weapon. Allred admitted owning a gun. He testified, however, that he last saw the gun several days before the incident and had

never seen Ortega with it.  When shown the gun found in the service station, Allred testified that it resembled his gun.

Immediately following Allred's direct examination and prior to cross-examination, the prosecutor requested a bench conference.  The prosecutor then informed the trial judge that Allred's bail had been reduced and that Allred had been released from custody.  The prosecutor explained that the bail was reduced because Allred passed a polygraph examination.  The prosecutor asked the trial judge to restrict Ortega's counsel from pursuing matters concerning the reduced bail.  After hearing counsel's argument, the trial judge ruled that Allred's counsel could not ask "if his bond was reduced as a result of favoritism."

Citing Rule 5A:18, the Commonwealth alleges Ortega forfeited his right to raise this claim on appeal by failing to object at trial.  We disagree.  This issue arose when the Commonwealth objected to an anticipated line of questions by defense counsel.  The record demonstrates that the trial judge was alerted to the contested issue, heard arguments from both counsel, and had the opportunity to rule intelligently.  The arguments at the bench conference fulfilled the purpose of 5A:18.  See Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992).

"Cross-examination is fundamental to the truth-finding process . . . [and] is an absolute right guaranteed by the confrontation clause of the Sixth Amendment."  Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 733 (1985).

Questioning the motive of a witness "'is a proper and important function of the constitutionally protected rights of cross-examination.'" Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)(citation omitted). See also Deavers v. Commonwealth, 220 Va. 14, 16, 255 S.E.2d 458, 459 (1979).

To allow for the exploring of the depths of a witness' self-interest, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Davis v. Alaska, 415 U.S. 308, 316 (1974). "One purpose of cross-examination is to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest." Barker, 230 Va. at 376, 337 S.E.2d at 733. Indeed, "a defendant is entitled to show that testimony of a prosecution witness was motivated by an expectation of leniency in a future trial." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). Absent a showing of abuse in the conduct of the examination, a defendant has an absolute right to cross-examination of witnesses for bias or motivation. Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984).

Although the Commonwealth told the judge during the bench conference that Allred's bond had been reduced due to the results of a polygraph examination, Ortega was entitled to the opportunity to examine Allred before the jury concerning the

reduction in his bail and to establish, if he could, that Allred was given special consideration because of Allred's promise to testify favorable for the Commonwealth. Allred's motivation and self-interest were proper areas of inquiry. The Commonwealth's argument, that it could only rehabilitate Allred by introducing the polygraph results, was not a proper basis to limit cross-examination. The trial judge's fear that the jury would learn of the polygraph could have been assuaged by instruction to Allred. Indeed, the prosecutor stated that he had "told . . . Allred not to say anything about a polygraph."

If Allred's motive in testifying was a grant or promise of leniency, Ortega was entitled to explore it through cross-examination. The lowering of the bail, whether as part of an explicit or implicit agreement, may have encouraged Allred to testify for the Commonwealth. Thus, it may have had a direct bearing upon the jury's consideration of his credibility. Ortega had a right to investigate during cross-examination the reasons why Allred agreed to testify for the Commonwealth. Barker, 230 Va. at 376, 337 S.E.2d at 733-34. Accordingly, we conclude that the trial judge denied Ortega's Sixth Amendment right of cross-examination in forbidding any questions regarding the reduction of Allred's bond. Williams v. Commonwealth, 4 Va. App. 53, 77-78, 354 S.E.2d 79, 93 (1987).

The Commonwealth argues that the judge's restriction of cross-examination was harmless. We do not agree. To prove a

constitutional error is harmless, the Commonwealth must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). In his testimony, Allred described Ortega's anger at the cashier and the role that Ortega played in the decision to rob the store. Allred also testified that Ortega "had had problems with [the victim] before" and that Ortega had a motive to kill the victim. Thus, Allred's testimony was crucial in the Commonwealth's proof that the killing was "willful, deliberate, and premeditated." Code § 18.2-31(4). Allred provided important testimony of Ortega's state of mind and intent. The only other evidence tending to prove Ortega's frame of mind prior to the shooting was purely circumstantial.

The record does not establish beyond a reasonable doubt that if Ortega had been permitted to examine Allred regarding bias and motivation, the jury would not have rejected Allred's testimony and the verdict would have been the same. Because the error was not harmless, we must reverse the convictions and remand for a new trial.

Reversed and remanded.