Justice KINSER, concurring.
I fully agree with the majority opinion in this case. I write separately to address the dissent's failure to view the evidence in the light most favorable to the Commonwealth, to consider the circumstantial evidence, and to address the Commonwealth's theory of the case. Unlike the dissent, I conclude that the Commonwealth did indeed prove beyond a reasonable doubt that John Allen Muhammad was a principal in the first degree in the murder of Dean Meyers under Code § 18.2-31(8), "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period."
Certain basic and well-established principles must guide the appellate review of this case. When the sufficiency of the evidence is challenged on appeal, this Court must view the evidence and all reasonable inferences flowing therefrom in the light most favorable to the prevailing party at trial, in this case the Commonwealth. Commonwealth v. Norman, 268 Va. 539, 545-46, 604 S.E.2d 82, 85 (2004); Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 322 (2003). It is our duty to affirm the trial court's judgment unless that judgment is plainly wrong or without evidence to support it. Code § 8.01-680; Barrett v. Commonwealth, 268 Va. 170, 179, 597 S.E.2d 104, 108 (2004); Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).
In viewing the evidence in the light most favorable to the prevailing party at trial, we must consider all the evidence, both direct and circumstantial. "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Hudson, 265 Va. at 512, 578 S.E.2d at 785. "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980) (citing Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)).
Instead of adhering to these principles of appellate review, the dissent presents the evidence in the light most favorable to Muhammad rather than the Commonwealth. The dissent does so by failing to address the compelling circumstantial evidence concerning the other 15 shootings that occurred during a span of 47 days in addition to the Meyers shooting and the similarities among those shootings that demonstrate the method employed by Muhammad and Lee Boyd Malvo in the murder of Meyers. There is no mention of the forensic evidence establishing that the.223 caliber Bushmaster rifle recovered when Muhammad and Malvo were apprehended was used in 13 of the 16 shootings, including the Meyers murder, or the evidence showing that the rifle is equivalent to a type of weapon used by military snipers. Likewise, the dissent takes no notice of the fact that, in 10 of the 16 shootings, the Caprice that Muhammad purchased after the first shooting and in which he and Malvo were sleeping when arrested was seen in the vicinity of those shootings, including the Meyers shooting, either before, at the time of, or soon after they occurred. In the Meyers shooting, the Caprice actually was seen in the area both before and after the shooting.
*66 The dissent further makes no reference to the alterations to the Caprice enabling the shooter in the two-man sniper team to fire a high-velocity rifle from the trunk while minimizing the shooter's visibility. Finally, there is no mention of the many tools used by sniper teams that were recovered in the Caprice along with the Bushmaster rifle: a bipod system for support of the rifle; holographic and telescopic scopes to aid sighting; global positioning system equipment to locate and relocate a vantage point for the long-range shot; "walkie-talkie" handheld radio sets for communication; bungee cords for easy "break down" of the rifle for transportation purposes; and silencers. The dissent's failure to consider all the evidence, both direct and circumstantial, in the light most favorable to the Commonwealth is contrary to the principles of appellate review.
The dissent also does not address the Commonwealth's theory of the case. The Commonwealth predicated its theory on the methodology employed by a two-man sniper team. The testimony of Sergeant Major Mark Spicer clearly demonstrated that such a team employs one member as the long-range "shooter" and the other member as the "spotter." The spotter's job is to determine when the target is within the zone of fire and a shot can be taken, given the other surrounding circumstances, and to inform the shooter, who is positioned in an obscure place, of these facts and to give the order to shoot at the opportune moment.
It is the order to shoot that differentiates this case from the dissent's analogy to a "lookout" or "wheelman." The typical lookout or wheelman in a robbery does not direct at what moment the robber brandishes a weapon at a bank teller or store clerk and demands money. In the present case, it is that direct and immediate action by the spotter in giving the order to shoot that forms the basis of the Commonwealth's theory that Muhammad acted as a principal in the first degree. Such conduct by the spotter in a two-man sniper team is not "indirect" and is not "the quintessence of a principal in the second degree."
The dissent, however, never explains why such action by the spotter would not make that person a principal in the first degree. Instead, the dissent concludes that Malvo made the final decision about whom to shoot and when to do so. The dissent states, again not in the light most favorable to the Commonwealth, that "Malvo could have picked any target and decided at any time to fire or not," and thereby reduces Muhammad's role to that of merely giving advice about the traffic flow on a multi-lane highway. In other words, the dissent does not deal with the Commonwealth's theory that Muhammad gave the order to shoot and the circumstantial evidence supporting that theory.
Under our case law, "where two or more persons take a direct part in inflicting fatal injuries, each joint participant is an `immediate perpetrator,'" i.e., a principal in the first degree. Strickler v. Commonwealth, 241 Va. 482, 495, 404 S.E.2d 227, 235, cert. denied, 502 U.S. 944, 112 S.Ct. 386, 116 L.Ed.2d 337 (1991); see also Remington v. Commonwealth, 262 Va. 333, 349-50, 551 S.E.2d 620, 630 (2001), cert. denied, 535 U.S. 1062, 122 S.Ct. 1928, 152 L.Ed.2d 834 (2002); Williams v. Commonwealth, 248 Va. 528, 545, 450 S.E.2d 365, 375 (1994), cert. denied, 515 U.S. 1161, 115 S.Ct. 2616, 132 L.Ed.2d 858 (1995). In Strickler, the Commonwealth's theory was that Strickler and another individual had jointly participated in the actual killing. Id. at 494, 404 S.E.2d at 235. The Commonwealth argued that, since the victim's death was caused by the crushing of her skull with a 69-pound rock, it would have been necessary for one assailant to hold her down on the ground while the other assailant lifted the rock and dropped it on her head. Id. We agreed and concluded that the weight and size of the rock "made it apparent that a single person could not have lifted it and dropped or thrown it while simultaneously holding the victim down." Id. Even though the evidence did not show which assailant wielded the rock, we held that Strickler took a direct part in inflicting the fatal injuries and was therefore an "immediate perpetrator." Id. at 495, 404 S.E.2d at 235.
Turning to the evidence in this case and viewing it in the light most favorable to the Commonwealth, I conclude that Muhammad, like Strickler, acted as a principal in the first *67 degree. The dissent does not dispute, nor can it, that Muhammad, Malvo, the Caprice, and the Bushmaster rifle were all present at the scene of the Meyers shooting. In fact, soon after the shooting, Muhammad and the Caprice were seen in a parking lot directly across the street from the gas station where Meyers was shot. A police officer questioned Muhammad about why he was in the parking lot. Muhammad told the officer that the police had directed him into that parking lot. However, the officer explained that, after the shooting, the procedure was to direct traffic away from the area, not into it.
Also, a map containing both Muhammad's and Malvo's fingerprints was found in the parking lot. Forensic evidence established that the bullet recovered during the autopsy of Meyers' body was fired from the Bushmaster rifle. While only Malvo's fingerprints were found on the Bushmaster rifle, DNA matching that of both Muhammad and Malvo was found on the rifle.
The question is whether the "combined force" of this evidence along with "many [other] concurrent and related circumstances" surrounding not only the Meyers shooting but also the other 15 shootings and the sniper tools found in the Caprice when Muhammad and Malvo were apprehended establishes beyond a reasonable doubt that Muhammad acted as an immediate perpetrator in the Meyers killing. Hudson, 265 Va. at 514, 578 S.E.2d at 786 (citation omitted). Each piece of circumstantial evidence is not to be viewed in isolation. Id.
Soon after the Meyers shooting, the Caprice, with Muhammad in the driver's seat, was in a parking lot directly across a nine-lane highway from the gas station where Meyers was killed. The location of the parking lot provided a direct line of fire to the gas station. Due to the traffic on this multi-lane highway and the small hole in the trunk of the Caprice through which to fire the Bushmaster rifle, the jury could reasonably have inferred that the shooter fired upon order from the spotter because only the spotter could determine the opportune moment to fire a shot that would avoid oncoming vehicular traffic, then strike and kill the victim. See Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976) ("it is within the province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts").
Thus, in this case, Muhammad was either the shooter, making him a principal in the first degree, or the spotter, also making him a principal in the first degree. The evidence concerning all 16 shootings and the reasonable inferences flowing therefrom viewed in the light most favorable to the Commonwealth demonstrate that, in this two-man sniper team, the spotter took an immediate and direct action in the Meyers murder by giving the order to shoot, an act that, in my view, is equivalent to pulling the trigger or holding the victim down on the ground as in Strickler. Such action by the spotter goes beyond the conduct of a principal in the second degree who merely encourages, incites, or aids in the commission of a crime. See Jones v. Commonwealth, 208 Va. 370, 372-73, 157 S.E.2d 907, 909 (1967).
For these reasons, I respectfully concur and, like the majority, would affirm all the convictions.
Justice AGEE, with whom Justice LACY and Justice KOONTZ join, dissenting in part and concurring in part.
The common law classification of criminal perpetrators that distinguished between principals in the first and second degree has become of limited significance in modern times. Nearly all jurisdictions have enacted provisions similar to Virginia Code § 18.2-18, which erase the distinction between principals of the first and second degree by treating both categories of criminal actors as principals in the first degree for purposes of indictment, trial, conviction, and punishment.
However, the common law distinction between principals of the first and second degrees remains of significant importance in a case of capital murder in Virginia because the General Assembly has specifically provided in Code § 18.2-18 that a "principal in the second degree to a capital murder shall be indicted, tried, convicted and punished as though the offense were murder in the first *68 degree." Thus, unless the Commonwealth proved beyond a reasonable doubt that John Allen Muhammad was a principal in the first degree to the murder of Dean Meyers under Code § 18.2-31(8), the plain language of Code § 18.2-18 bars conviction and punishment of Muhammad for capital murder under Code § 18.2-31(8). Accordingly, the common law distinction between acts sufficient to constitute a principal in the first degree and those of a principal in the second degree is of vital importance.
At common law, a principal in the first degree is a person who engages in criminal conduct by his own hand-he fires the gun that kills, he takes and carries away the property of another.
. . . . .
At common law, a principal in the second degree is a person who is present at the scene of a crime, but does not engage in the criminal conduct; he merely aids and abets the principal in the first degree in committing the crime. He may be actually present, assisting the principal in the first degree, standing ready to assist if needed, or commanding, counseling, or otherwise encouraging the principal in the first degree to commit the crime; or, although at a distance from the scene of the crime, he may be deemed present when he is acting as a driver of the getaway car or as a lookout with instructions to warn the principal in the first degree if anyone approaches.
1 Charles Torcia, Wharton's Criminal Law §§ 30-31 (15th ed.1993).
Based on the record in this case, the Commonwealth did not prove that Muhammad was a principal in the first degree to the capital murder of Dean Meyers under Code § 18.2-31(8). Under established law, Muhammad may be a principal in the first degree to the Meyers murder in two circumstances: (1) if he actually shot Meyers or (2) if he and Lee Boyd Malvo are found to be joint principals, with each acting as an "immediate perpetrator" in the killing. The record does not establish that the Commonwealth proved either circumstance.
Our decision in Rogers v. Commonwealth, 242 Va. 307, 410 S.E.2d 621 (1991), precludes finding that Muhammad is a principal in the first degree as the actual shooter of Meyers under the facts of this case. In Rogers, we reversed a defendant's capital murder conviction because the evidence placed the defendant and another man in the victim's house at the time of the murder and the Commonwealth failed to present "any evidence ... which places the murder weapon in defendant's hands." Id. at 319, 410 S.E.2d at 628. "Stated differently, the Commonwealth ... failed to exclude [the second man] as the perpetrator." Id.
Following Rogers, Muhammad cannot be a principal in the first degree as the actual shooter of Meyers because the Commonwealth has not excluded Malvo as that person, and it presented no evidence that Muhammad was the actual shooter. "Because the circumstances of defendant's conduct do not exclude the reasonable hypothesis that [the second man (Malvo)] killed the victim, the capital murder prosecution fails." Id. at 320, 410 S.E.2d at 629. Therefore, Muhammad may not be convicted of Meyers' capital murder upon this record if the Commonwealth's position is Muhammad actually shot Meyers.
The Commonwealth primarily relies, however, on an expansive reading of the concept of "immediate perpetrator" based on Sergeant Spicer's theory of how a sniper team should operate. The majority opinion adopts this theory and concludes both Malvo and Muhammad are culpable as principals in the first degree because "actual participation together in a unified act" renders each an immediate perpetrator. In doing so, the Commonwealth and the majority opinion reach beyond any precedent of this court and ignore clear foundations of the criminal law that have long defined the distinction between principals of the first and second degree. Our precedent establishes that co-actors in a capital murder can only be immediate perpetrators when each actor undertook a direct act "in the immediate presence of the victim's body when the fatal blows were struck and, hence, had jointly participated in the killing." Strickler v. Commonwealth, *69 241 Va. 482, 494, 404 S.E.2d 227, 235 (1991), cert. denied, 502 U.S. 944, 112 S.Ct. 386, 116 L.Ed.2d 337 (1991).
In Coppola v. Commonwealth, 220 Va. 243, 257 S.E.2d 797 (1979), cert. denied, 444 U.S. 1103, 100 S.Ct. 1069, 62 L.Ed.2d 788 (1980), the victim died from blows to the head. Id. at 246, 257 & n. 5, 257 S.E.2d at 800, 807 & n. 5. In the course of an armed robbery, the defendant beat the victim's head against the floor and a codefendant struck her in the head with his fist. Id. at 246, 257 S.E.2d at 800. We affirmed the defendant's death sentence finding him to be "an immediate perpetrator" because both he and his codefendant directly assaulted the victim as they "jointly participated in the fatal beating." Id. at 256, 257 S.E.2d at 806. This action rendered the defendant a principal in the first degree.
In Strickler v. Commonwealth, 241 Va. 482, 404 S.E.2d 227 (1991), the evidence showed that the victim was killed by a blow to the head from a 69 pound rock. We noted "a single person could not have lifted [the rock] and dropped or thrown it while simultaneously holding the victim down." Id. at 494, 404 S.E.2d at 235. We affirmed the conviction for capital murder holding that because the defendant "[took] a direct part in inflicting [the] fatal injuries" he was an "immediate perpetrator" and thus a principal in the first degree. Id. at 495, 404 S.E.2d at 235.
In Lenz v. Warden, 265 Va. 373, 381, 579 S.E.2d 194, 199 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2933, 159 L.Ed.2d 836 (2004), Lenz and another convict, Remington, inflicted "68 stab wounds and all the wounds contributed to the victim's death." Lenz argued that "he could only be convicted of capital murder in the event the jury found beyond a reasonable doubt that he was the triggerman." Id. (internal quotation marks omitted). We disagreed, holding that "when two or more persons take a direct part in inflicting injuries, each joint participant is an immediate perpetrator for the purposes of the capital murder statutes." Id. (citation and internal quotation marks omitted).
In Remington v. Commonwealth, 262 Va. 333, 551 S.E.2d 620 (2001), cert. denied, 535 U.S. 1062, 122 S.Ct. 1928, 152 L.Ed.2d 834 (2002), Lenz' co-perpetrator was convicted for the same capital murder. We affirmed the trial court's denial of the defendant's proffered jury instructions that would have instructed the jury that he was a principal in the second degree unless he inflicted the actual fatal blow that caused the victim's death out of the many blows struck. Because the evidence established "that Remington and Lenz jointly participated in [the victim's] death[,]" we found that the trial court did not err in refusing the instruction. Id. at 350, 551 S.E.2d at 630.
Similarly, the Court of Appeals found the defendant in Hancock v. Commonwealth, 12 Va.App. 774, 407 S.E.2d 301 (1991), to be an immediate perpetrator of attempted capital murder by arson when he poured gasoline on a cushion while another person immediately ignited it. The court noted that "[b]oth men were principals in the first degree. Both provided the direct means to ignite the fire. Placing the flammable material in place for another to ignite it makes that person a perpetrator." Id. at 781, 407 S.E.2d at 305-06.
All of these cases involve direct, contemporaneous acts on the part of the co-perpetrators that combined to proximately inflict the injury on the victim. In each case, both perpetrators were physically present and personally participated by a direct act against the victim to accomplish the murder, or to set the fire in Hancock. In the case at bar, however, there is no such evidence of a similar direct act by Muhammad.
Assuming Muhammad acted as hypothesized by the Commonwealth's witness, Mark Spicer, in positioning the Caprice in the Bob Evans parking lot to face the gas station and communicating to Malvo that the coast was clear to fire at Meyers, that is not the act of a principal in the first degree under Virginia law. Such conduct is the quintessence of activity by a principal in the second degree: "encouraging, inciting, or in some manner offering aid in the commission of the crime ... lending countenance, or otherwise aiding while another did the act." Jones v. Commonwealth, 208 Va. 370, 373, 157 S.E.2d 907, 909 (1967).
*70 In that regard, Muhammad's actions were of the same character as those of a lookout or wheelman in a robbery. Such a person may provide the means and direction for the commission of the robbery by driving the actual perpetrators to the scene and keeping watch while the others directly commit the crime. Like Muhammad, the wheelman may communicate by walkie-talkie or cell phone to the actual perpetrators instructing them as to when to commit the robbery and then exit the premises in heavy traffic.* Undoubtedly these acts accord the actual perpetrators, who take the immediate and direct action to effectuate the robbery, an easier task with an increased likelihood of escape. Nevertheless, no serious argument can be made such a wheelman is a principal in the first degree under our jurisprudence.
That is because the wheelman takes an indirect role, not a direct role, in the crime of robbery. He is present, keeping watch and offering his counsel and direction to commit the crime to the actual perpetrators, which is Muhammad's role under the Commonwealth's theory of the case. The wheelman is an actual participant in the unified act of disparate persons culminating in a robbery, just as Muhammad was an actual participant in an act with Malvo that resulted in Meyers' murder. Neither the wheelman, nor Muhammad, in the given circumstances, can be deemed an immediate perpetrator and thus a principal in the first degree under Virginia law.
The crimes in Strickler, Coppola, Lenz, Remington and Hancock could not have occurred without the direct, contemporaneous, physical act of both perpetrators. The fire could not have been set without the direct, physical participation of both defendants in Hancock. Similarly, the murder in Strickler could not have occurred without both perpetrators acting together directly on the victim. The defendants in Coppola, Lenz and Remington each directly participated in the physical beating or stabbing of the victim. These direct acts define an immediate perpetrator, rendering each actor a principal in the first degree, but stand in contrast to Muhammad's indirect acts. The record in this case, viewed in the light most favorable to the Commonwealth, is simply devoid of the direct acts regarding a victim that our precedent requires to find Muhammad an immediate perpetrator acting as a principal in the first degree.
Assuming that the events occurred as the Commonwealth theorizes, it was nonetheless, Malvo, not Muhammad, who finally sighted the rifle to its target and made the ultimate decision to pull the trigger. Malvo could have picked any target and decided at any time to fire or not. While the range of Malvo's vision was more restricted than Muhammad's, the record reflects that Malvo was not "blind" and dependent on Muhammad in order to shoot Meyers. Spicer's own testimony confirms the shooter had "a very large field of view by slightly moving [his] head left or right while still maintaining a very small outward chance of ... being seen." The prosecutor even argued this point to the jury, noting that the shooter had "a much wider field of vision and a much narrower exposure." Obviously, Muhammad's advice and direction to Malvo of the traffic flow along the multiple lane highway made Malvo's choice easier and more likely to succeed. But in the end, it was Malvo who had to make the final decision to shoot and performed the direct act of firing the rifle.
Put simply, there is a failure of proof to establish Muhammad as a principal in the first degree so as to sustain his conviction under Code § 18.2-31(8). The evidence in this record, viewed in the light most favorable to the Commonwealth and indulging all the inferences from its theory of the case, establishes Muhammad's actions as those of a principal in the second degree, "actually present, assisting the principal in the first degree [Malvo], standing ready to assist if needed, or commanding, counseling, or otherwise *71 encouraging the principal in the first degree to commit the crime," 1 Wharton's Criminal Law, supra, at § 31. Conversely, this same evidence of Muhammad commanding and directing Malvo's actions effectively proves the requisite conduct for the conviction under Code § 18.2-31(13) for "a killing pursuant to ... direction and order." Code § 18.2-18.
Virginia law is clear that "a principal in the second degree, may [not] be convicted of capital murder under the provisions of [the] Code," Coppola, 220 Va. at 256, 257 S.E.2d at 806, unless one of the enumerated exceptions such as under Code § 18.2-31(13) applies. Thus, we have noted that
[o]nly the actual perpetrator of the crime may be convicted of capital murder ... Thus, neither an accessory before the fact nor a principal in the second degree may be so convicted.... The Commonwealth has the burden of proving beyond a reasonable doubt that one accused of capital murder was the actual perpetrator of the crime. Suspicion of guilt, however strong, or even a probability of guilt is insufficient to support a conviction.
Rogers, 242 Va. at 317, 410 S.E.2d at 627 (citations and internal quotation marks omitted).
The General Assembly has specifically limited a capital murder conviction under Code § 18.2-31(8) by its enactment of Code § 18.2-18. In doing so, the General Assembly has mandated that a principal in the second degree cannot be convicted of capital murder, but his conviction is limited to murder in the first degree. This statutory mandate is binding on the judiciary until altered by the General Assembly.
For the forgoing reasons, Muhammad's conviction and sentence for the capital murder of Dean Meyers under Code § 18.2-31(8) should be reversed and remanded according to the statutory directive of Code § 18.2-18. Accordingly, I respectfully dissent from section II(B)(1) of the majority opinion regarding the conviction and sentence under Code § 18.2-31(8). To the extent the conviction under Code § 18.2-31(13) is based upon a principal in the first-degree analysis, I respectfully dissent from section II(B)(2), but I concur in the alternative ground in section II(B)(2) and would thus affirm the conviction and sentence of death under Code § 18.2-31(13). Otherwise, I concur in the majority opinion.
---------------
---------------