COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Clements
Argued by teleconference


ERIC SANTOS JAMES ORYEM

MEMORANDUM OPINION[*] BY
v.       Record No. 2638-08-4          JUDGE WILLIAM G. PETTY
                                        DECEMBER 8, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

George J. Wooditch, Jr. (The Law Offices of Anderson, Graham &
Wooditch, P.C., on brief), for appellant.

Erin M. Kulpa, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


On July 30, 2008, Eric Santos James Oryem was convicted of four counts of

embezzlement by a public officer in violation of Code § 18.2-112. On appeal, he argues that the

trial court erred by denying his motion to suppress a key found in his jacket because the search

violated the Fourth Amendment. Assuming without deciding that the trial court erred, we affirm

because such error was harmless beyond a reasonable doubt.

I. ANALYSIS

"When a federal constitutional error is involved, a reviewing court must reverse the

judgment unless it determines that the error is harmless beyond a reasonable doubt." Clay v.

Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). "'We decide whether the

erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of

our own reading of the record and on what seems to us to have been the probable impact on the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fact finder.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Green v. Commonwealth, 32 Va. App. 438, 446, 528 S.E.2d 187, 191 (2000)). "'An error is harmless only when it plainly appears from the record and the evidence that the error has not affected the verdict. Whether an error does not affect the verdict must be determined without usurping the jury's fact finding function.'" Id. (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992)). Here, the evidence Oryem sought to suppress was cumulative and inconsequential. Thus, we hold that the trial court's denial of Oryem's motion to suppress was harmless error beyond a reasonable doubt.

On appeal, we review the evidence in the "light most favorable" to the prevailing party below, the Commonwealth, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to that party all fair inferences flowing therefrom. Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

The parking office of Northern Virginia Community College (NVCC) employed Eric Oryem beginning in 2002. In 2004, NVCC installed parking meters and assigned Oryem the responsibility of collecting the money deposited in the meters. When the meters were first installed, Oryem gave one key to his supervisor and kept the other key for himself. The meters did not record how much money was deposited; rather, the only accounting of the money collected from the meters was Oryem's deposit slip that he would leave for his supervisor to deposit on Monday morning

In 2007, the college relocated the collection process to the business office because the business manager had noticed a discrepancy in that process. The business manager assigned Kathy Clement, then assistant business manager, to design policies to tighten the internal controls regarding meter collections. In doing so, Clement noticed that the parking office only had one key for the parking meters, which she thought was unusual because the industry standard

- 2 -

was to keep two sets of keys. She instituted a process for collecting money from the parking meters, which included locking the key in a safe that only business office staff could access, logging out the parking meter key from the safe by signing a log out sheet, requiring that two people collect the money from the parking meters, and requiring that those two people notify campus police when they leave to collect the money from the parking meters. She also requested that the locks on the meters be changed. The locks on the meters were changed on November 9, 2007.

Prior to that date, Oryem contacted Booher & Associates—the company that had been contracted to change the locks on the meters—and requested that he be allowed to help with the changing of the locks. When this conversation was relayed to Clement, she thought it was suspicious. During the lock change, an employee from Booher & Associates informed Clement that three of the coin storage vaults, which were located inside the meters, were broken. This defect "would allow a person with just the meter key to be able to get the money directly from the meters." Chad Booher gave two new keys, which bore the number 306, for the new locks to Clement and she, in return, gave Mr. Booher the key to the old lock, which bore the number 352.

Clement reported the broken vaults to Sergeant Tolson with the NVCC police office on Monday, November 12, 2007. Monday afternoon, Clement logged out the meter key from the safe and went to the parking meter with Sergeant Tolson. When she attempted to open the parking meter, the key would not work. She testified that the key looked old and "scuffed up." Clement went back to the business office and searched the safe for the new meter key but could not find it. She then pulled the spare new meter key to compare the two and realized that they were two different keys, one being the missing old meter key. According to the meter key log out sheet, Oryem was the only person to check out the new key between Friday, November 9 and

Monday, November 12. The unmistakable inference was that he had replaced the new key with the old key.[1]

Clement and Tolson decided to go about "business as usual, put the key, the old key that had turned up back in operation in the top [of the safe], and just wait and see." The next day, Clement and the business office staff searched the office for the new meter key to no avail. A couple days later, Oryem and another parking office employee logged out the old meter key to collect the money from the parking meters. Officer Spalding observed Oryem open the parking meters and collect the money from them. Spalding then contacted Officer Tantiyankul who advised him to stop Oryem. During the stop, Spalding asked Oryem for the key that he used to open the parking meters and he handed the key to Spalding. Officer Spalding gave the key to Officer Tantiyankul.

Both officers took Oryem to the business office and presented Clement with the key they had recovered from Oryem and asked her if she could verify that it was the new meter key, which she did. Then, they escorted Oryem to the police office and Officer Tantiyankul asked Oryem for consent to search him and he said no. Officer Tantiyankul left the police office and went back to the business office and asked the other parking meter employee for consent to search his jacket, which he agreed to. Tantiyankul found nothing in his jacket. Tantiyankul returned to the police office, arrested Oryem, and conducted a search of Oryem's university parking office jacket. Inside, he found the old parking meter key. Officer Tantiyankul returned to the business office with the old meter key, which he gave to Clement.

---

[1] "Under settled principles, we review a trial court's factfinding 'with the highest degree of appellate deference.'" Cooper v. Commonwealth, 54 Va. App. 558, 572, 680 S.E.2d 361, 368 (2009) (quoting Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006)). Included in that deference is the mandate that we grant to the Commonwealth all fair inferences that may be drawn from the facts. Coleman, 52 Va. App. at 21, 660 S.E.2d at 688.

According to Oryem's bank records, from April 2, 2006 until October 7, 2006 he had deposited thirty-three thousand four hundred and sixty-nine dollars in coins.

Oryem argues that the trial court erred by denying his motion to suppress the key found in his upper right jacket pocket after he was arrested. He reasons that, even though the university owns the jacket, he had a reasonable expectation of privacy in the jacket and the police unreasonably searched the jacket incident to his arrest because the jacket was not on him at the time of his arrest. Therefore, he concludes, the search exceeded the scope of a permissible search incident to arrest and, as a result, violated his Fourth Amendment guarantee against unreasonable searches and seizures.

Assuming without deciding that the trial court erred, we hold that the error was harmless beyond a reasonable doubt.[2] The fact that the old key was found in Oryem's jacket was irrelevant considering that he possessed the new key. The new key had been removed from the safe and was missing. From the time that Clement had placed the new key in service—Friday, November, 9, 2007—until the time when Clement discovered that the new key was missing and replaced by the old key—Monday, November 12, 2007—Oryem was the only person to sign out the parking meter key. After discovering that the old key had been substituted for the new key, Clement placed the old key back in service by leaving it in the safe to be checked out.

The ultimate purpose of placing the old key back in service was to observe those who collect money from the parking meters to determine who had the new key. After Clement placed

---

[2] Oryem's unsuccessful motion to suppress sought to exclude any evidence of the officer's discovery of the old key in Oryem's jacket. In his case-in-chief, however, Oryem took the stand in his own defense and testified the old key was in fact in the upper right pocket of his jacket, right where the officer found it. Given our holding, we need not decide whether Oryem's testimony waived his earlier challenge to the Commonwealth's evidence on this issue. See generally, Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992) ("The rule is that 'where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'" (citation omitted)).

the old key back into service, Oryem checked out the old key and never returned it. He gave the new key to Officer Tantiyankul. Tantiyankul searched the other parking office employee and he did not have the old key in his possession. Thus, even if the police had not searched Oryem's jacket to find the old key, the jury could reasonably infer that he had the old key in his possession simply because he checked it out and never returned it.

But having the old key in his possession at the time of his arrest did not incriminate Oryem. On the contrary, having the new key in his possession incriminated Oryem at the time of his arrest. Once the new key became the "missing" key, whoever had the new key would have necessarily possessed the old key. Thus, Oryem's possession of the new key evidenced the fact that he took the new key from the safe and replaced it with the old key. Because he was caught with the new key, it follows logically that he had the old key and the opportunity to misappropriate the money deposited in the parking meters. Therefore, the fact that the old key was found in Oryem's upper right jacket pocket was merely cumulative evidence of a fact that the Commonwealth had clearly proven.

In addition, the fact that Oryem regularly deposited large sums of money in quarters in his bank account on Saturdays—the same day he generally collected the money from the parking meters—in conjunction with the fact that he lied about the source of those quarters to his bank and to the police,[3] support the contention that he embezzled the quarters from the parking meters. The bank's records show that Oryem had deposited over $33,000 in coins into his

---

[3] Oryem told the bank teller that he received the coins from his sister's large coin collection, and he told the police that he received the quarters from his uncle's vending machines in his liquor store in Maryland. "The factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal his guilt." Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999) (citing Toler v. Commonwealth, 188 Va. 774, 782, 51 S.E.2d 210, 214 (1949); Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987)).

account within a period of six months.  Moreover, after Oryem was fired, the parking meter receipts quadrupled over a six-month period.

## II.  CONCLUSION

Assuming without deciding that Oryem's Fourth Amendment protection against unreasonable searches and seizures was violated, we conclude that the error was harmless beyond a reasonable doubt.  Therefore, we affirm.

Affirmed.