COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia


DWAYNE OTTIS DALTON

                                                              MEMORANDUM OPINION* BY
v.        Record No. 0154-22-2                       JUDGE JAMES W. HALEY, JR.
                                                                     MAY 16, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge[1]

Rick Boyer (Integrity Law Firm, PLLC, on brief), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        Dwayne Ottis Dalton appeals his convictions, following a bench trial, for possession of a

Schedule I or II controlled substance, possession of ten or more forged bank notes with intent to

utter or employ as true, and forgery of bank notes,  in violation of Code §§ 18.2-250, 18.2-173, and

18.2-170.[2]  Dalton asserts that the evidence was insufficient to support his convictions because it is

"incredible."  For the following reasons, we disagree and affirm the convictions.

## BACKGROUND

        On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] The Honorable Kimberley S. White presided over the proceedings below.  Now a
member of this Court, Judge White took no part in this decision.

[2] Dalton pleaded guilty to driving on a suspended license in violation of Code § 46.2-301
and does not contest this conviction on appeal.

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

So viewed, on February 7, 2020, Halifax County Sheriff's Deputy Giles Jones was driving on Highway 58 when he witnessed a Jeep swerve and almost hit another vehicle. Deputy Jones activated his lights and siren and initiated a traffic stop. The Jeep, driven by Dalton, pulled into a motel parking lot. When Deputy Jones asked for Dalton's license, Dalton stated he was unable to find his wallet. When asked to provide his name and social security number, Dalton misspelled his own name and provided an incorrect social security number.

After running Dalton's information and failing to find him in the Virginia database, Deputy Jones re-approached the vehicle. Dalton then gave Deputy Jones the correct spelling of his name and his accurate social security number. With this information, Deputy Jones learned that Dalton's license was suspended. Because Dalton appeared nervous and provided inaccurate information, Deputy Jones requested backup units. South Boston Police Officer Trevor Richardson and another officer responded.

Upon backup arrival, Deputy Jones deployed his K-9 around the vehicle. The K-9 alerted at the Jeep's back passenger door. Dalton and his girlfriend were removed from the vehicle and patted down. While patting Dalton down, Deputy Jones found a lighter and a baggie of what appeared to be methamphetamine in Dalton's right front pocket. Testing confirmed that the baggie contained 0.4333 gram of methamphetamine. Deputy Jones also found what appeared to be a sex toy in Dalton's front left pocket.

Deputy Jones and the South Boston officers began to search Dalton's vehicle, while Dalton smoked cigarettes. Deputy Jones found Dalton's wallet in the center console. Dalton's

license and what was later determined to be a counterfeit five-dollar bill were found within the wallet. On the back seat, Officer Richardson found a box of linen paper and paper cutting instruments. Within the box, officers found some of the linen paper with U.S. currency printed on it in several different denominations. Other pieces of linen paper within the box had "printouts that had already been cut out."

U.S. Secret Service Special Agent Matthew Miranda reviewed all the paper currency collected. Special Agent Miranda determined that all the currency found in the box of linen paper was non-genuine because the bills did not contain any security features found in U.S. currency. Additionally, Special Agent Miranda determined that one of the five-dollar bills in Dalton's wallet was non-genuine. The five-dollar bill contained no security features and had the same serial number as the bills found in the box. Special Agent Miranda noted that you "would never see two identical serial numbers within the same machine" at the Federal Reserve.

In the trunk of the vehicle officers found two luggage bags. One of the luggage bags contained women's clothing, and Dalton's girlfriend claimed ownership of it. The second luggage bag contained men's clothing, several thumb drives, and a cut straw with residue. Deputy Jones testified that in his training and experience as a K-9 officer a cut straw with residue is indicative of narcotics use. The thumb drives contained images of Dalton.

When asked about the methamphetamine found in his front pocket, Dalton stated that the sweatpants were not his and that he was unaware of the methamphetamine's presence. The police arrested Dalton. Before transporting him to the magistrate's office, Deputy Jones asked Dalton when he last used narcotics and if he needed medical attention. Deputy Jones noted that Dalton was sweating profusely even though it was cold outside, and he was concerned for Dalton's safety. Dalton denied that he used illicit narcotics. While at the magistrate's office, Dalton stated

that if he had known about the methamphetamine, he would have eaten it. When asked about the counterfeit currency, Dalton stated that "he rather not talk about that."

Dalton testified in his own defense. He admitted that he was a convicted felon and that he had been convicted of perjury. He stated that after work on February 7 he drove to Halifax to help his girlfriend move items. After moving items, he took a shower at his girlfriend's mother's home where he borrowed a pair of sweatpants. He and his girlfriend then drove to a motel where she had made reservations. Just before arriving at the motel, Deputy Jones pulled him over. He denied knowledge of the methamphetamine in his pocket and of the counterfeit currency in the back seat of the Jeep or in his wallet. He also asserted that the luggage in the trunk stayed in the Jeep all the time and he was not aware that there were any clothes in the bag.

He testified that his Jeep "wasn't [his] everyday thing" and he "mainly [drives his] Ford truck." He asserted that in 2019 he loaned his Jeep to a friend, Phillip Hedgepath. During that period the Jeep was impounded, and Dalton took Hedgepath to the impound lot to recover the vehicle. Months after loaning Hedgepath the Jeep, Dalton learned that Hedgepath had been convicted of uttering a false note. Additionally, Hedgepath had worked for Dalton's construction and antique restoration business. Consequently, Dalton often paid Hedgepath in cash. Dalton would also loan Hedgepath money, and Hedgepath would repay Dalton in cash. Dalton stated that he was unaware the box of linen paper was on the back seat of the Jeep.

On cross-examination, Dalton admitted that there was clothing in the luggage in the Jeep's trunk. When asked why he wore someone else's pants when he had his own clothing in his luggage, Dalton stated that he did not "even remember what all – if [the luggage] had clothing in it or not." When asked if he was carrying a sex toy in his pocket, Dalton stated he "guessed that's what it was." He admitted while at the magistrate's office he complained about the

officers tearing up his Jeep and he stated that it was "all [he's] got." Dalton, however, could not remember what he meant by that statement.

Dalton called Ronnie Shelton who testified that about two years prior he had seen Hedgepath driving Dalton's Jeep. Originally, Shelton thought it was Dalton driving because he saw Dalton in that Jeep "[a]ll of the time . . . [and] was with him when he got it." In rebuttal, the Commonwealth recalled Deputy Jones and played Deputy Jones's body worn camera from the magistrate's office for the court.[3]

The trial court convicted Dalton of all the charges and sentenced him to twelve months and thirty days of active incarceration. Dalton appeals.

## ANALYSIS

Dalton asserts that no reasonable fact finder could conclude that he was guilty beyond a reasonable doubt. He argues that the Commonwealth's case was inherently incredible. Furthermore, he asserts that the trial court arbitrarily disregarded his unimpeached testimony. He testified that after moving items for his girlfriend, he borrowed sweatpants to wear and did not know the pants contained methamphetamine. Additionally, Dalton testified that he loaned his Jeep to Philip Hedgepeth, who had previously been convicted of uttering forged notes, and that his primary vehicle was his work truck. Consequently, he was unaware of the box of counterfeit currency and production materials in the back seat of the Jeep. Furthermore, he frequently received U.S. paper currency from Hedgepeth and believed that during one of these exchanges he unknowingly received a counterfeit bill from Hedgepeth. Finally, he argues, the Commonwealth failed to present evidence that he attempted to pass a counterfeit bill.

---

[3] The body worn camera footage was never entered into evidence as an exhibit. The transcript does not provide any details concerning what the footage shows beyond that the video was played and the trial court's findings of fact.

I. Reasonable Hypothesis of Innocence and Witness Credibility

"Under the governing standard, 'we review factfinding with the highest degree of appellate deference.'" *Commonwealth v. Barney*, __ Va. __, __ (Mar. 16, 2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Meade v. Commonwealth*, 74 Va. App. 796, 805-06 (2022) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "Such deference stems, in part, from the trial court's 'opportunity to observe the testimony and the demeanor of the witnesses.'" *Meade*, 74 Va. App. at 805 (quoting *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021)).

"This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Barney*, __ Va. at __ (quoting *Meade*, 74 Va. App. at 806). "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *Id.* at __ (alteration in original) (quoting *Meade*, 74 Va. App. at 806).

"[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to

decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (second and third alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572-73 (2009) (en banc)).

Here, the record establishes that the trial court considered but rejected Dalton's hypothesis of innocence. The trial court specifically found that Dalton was incredible. Dalton was initially evasive. He told Deputy Jones he could not find his wallet, even though the police easily found it in the center console, a place, the trial court observed, people normally keep a wallet. Further, Dalton misspelled his name and gave a close but incorrect social security number to Deputy Jones. It was only when confronted with his lie that Dalton provided his true identifying information.

Although it was a cold February evening, Dalton was sweating so profusely that Deputy Jones was concerned for Dalton's health and safety, suspecting Dalton was under the influence of drugs, despite Dalton's denials. The pat-down search revealed that Dalton possessed methamphetamine in his pocket along with a lighter. The court found that these items—the methamphetamine and the lighter—were "fairly bulky, something that certainly one would know was in their pocket." Additionally, Dalton was a smoker, who was smoking cigarettes during the search. Although Dalton claimed that the sweatpants were not his and that he was unaware of the methamphetamine in them, a reasonable fact finder could conclude that Dalton was aware of what was in his pocket with his lighter. A reasonable fact finder may also conclude that Dalton likely did

- 7 -

not borrow sweatpants when he had a suitcase of his own clothes readily available. Under either theory, it is reasonable for the fact finder to reject Dalton's theory.

Officers found a box of linen paper and cutting instruments in the back seat of the vehicle in plain view. The box contained linen paper with U.S. currency printed on it in several different denominations. Several pieces of linen paper within the box had denominations that had been cut out. In the trunk of the vehicle officers found a luggage bag containing men's clothing and a thumb drive with images of Dalton. Within the luggage, officers found a cut straw with residue indicative of illicit narcotics ingestion. Although Dalton denied using drugs, he told Deputy Jones at the magistrate's office that if he had known about the drugs in his pocket, he would have consumed it.

Finally, the trial court found that Dalton's credibility was undermined by his own witness's testimony. Dalton testified that he had loaned his Jeep to Hedgepath in 2019. Defense witness Shelton affirmed that he saw Hedgepath with Dalton's Jeep in 2019. When asked why Shelton believed it was Dalton's Jeep, Shelton stated he thought it was Dalton because Dalton drove that Jeep "all the time" and Shelton had, in fact, been with Dalton when he bought the Jeep.

The court reasoned that even if Dalton had loaned the Jeep to Hedgepath in 2019, the box and paper cutting implements were in plain view for several months and would have been noticed by Dalton. The court found it incredible that Dalton was not aware of the box or the cutting implements in a vehicle that, according to his witness, he used all the time. Further one of the five-dollar bills in Dalton's wallet had the same serial number as one of the bills in the box. Special Agent Miranda testified that identical serial numbers are not within the same machine at the Federal Reserve. The court determined that Shelton's testimony affected the credibility of all of Dalton's testimony and found Dalton to be incredible.

"The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)). Considering the totality of the evidence, the trial court did not err in rejecting Dalton's hypothesis of innocence. We will not reverse the trial court's decision on appeal.

## II. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

When conducting a sufficiency review on appeal, we do not "distinguish between direct and circumstantial evidence" because the fact finder "is entitled to consider all of the evidence, without distinction, in reaching its determination." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (citation omitted). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)

(quoting *Stamper v. Commonwealth*, 220 Va. 260, 272 (1979)). "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Barney*, __ Va. at __ (quoting *Toler v. Commonwealth*, 188 Va. 774, 780 (1949)). "Circumstantial evidence must prove guilt beyond a reasonable doubt but not 'beyond all doubt.'" *Id.* at __.

## A. *Possession of Methamphetamine*

"It is unlawful for any person knowingly or intentionally to possess a controlled substance." Code § 18.2-250. "In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 572, 574 (1994)). Possession of contraband "may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018).

Here, the evidence, viewed in the light most favorable to the Commonwealth, establishes that Dalton had 0.4333 gram of methamphetamine in his pocket. The trial court determined that the items found in the pocket—the bag of methamphetamine and a lighter—were "fairly bulky" and thus were "something that certainly one would know was in their pocket." Furthermore, the trial court noted that Dalton was a smoker, who was smoking during the search of the Jeep, and the police found the lighter in the same pocket as the illicit narcotics. Additionally, the police found a cut straw in Dalton's luggage. In Deputy Jones's experience, a cut straw is used to consume illicit narcotics. A reasonable fact finder could conclude that Dalton was aware of the presence and character of the methamphetamine found in his pocket. We will not disturb the trial court's findings on appeal.

B.  *Forgery of Bank Notes and Uttering Forged Notes*

> If any person forge any coin, note or bill current by law or usage in this Commonwealth . . . or utter, or attempt to employ as true, or sell, exchange, or deliver, or offer to sell, exchange, or deliver, or receive on sale, exchange, or delivery, with intent to utter or employ, or to have the same uttered or employed as true, any such false, forged, or base coin, note or bill, knowing it to be so, he shall be guilty of a Class 4 felony.

Code § 18.2-170.

> If any person have in his possession forged bank notes . . . knowing the same to be forged or base, with the intent to utter or employ the same as true, or to sell, exchange, or deliver them, so as to enable any other person to utter or employ them as true, he shall, if the number of such notes or coins in his possession at the same time, be ten or more, be guilty of a Class 6 felony.

Code § 18.2-173.

Here, the evidence established that a box and paper cutting instruments were in plain view on the back seat.  The box contained linen paper with printed counterfeit bills and linen paper where counterfeit currency had been cut out.  Deputy Jones found a counterfeit five-dollar bill with the same serial number as bills in the box of linen paper in Dalton's wallet.  A reasonable fact finder could conclude that Dalton printed counterfeit currency onto the linen paper and excised that currency with the intent to utter it as genuine U.S. currency.  Because there is sufficient evidence in the record to support the trial court's factual findings, we will not reverse them on appeal.

## CONCLUSION

In sum, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Dalton was guilty of possession of

methamphetamine, employing a forged note, and forging a note.  Accordingly, we affirm the trial court's decision.

*Affirmed.*